## Bannon *v.* Lutz, Appellant.

*Master and servant—Negligence—Safe appliances.*

It is the duty of an employer to furnish his employees reasonably safe appliances with which to do the work assigned to them, and also to know what appliances are suitable and in common and ordinary use for the purpose.

In an action to recover damages for death of plaintiff's husband, it appeared that it was the duty of deceased to remove the manheads from the stills in an oil refinery after the fires were drawn. While in the performance of his duty he was killed by an explosion of gas in one of the stills. Evidence for plaintiff tended to show that it was customary to use steam in the stills after the fires were drawn for the protection of the men in removing the manheads, and that there was in common and ordinary use a contrivance by means of which the stillman was enabled to remove the manhead without lifting it from its place, or standing immediately in front of it. It appeared that neither this contrivance nor steam was used in defendant's works. *Held,* that the evidence was sufficient to support a verdict and judgment for plaintiff.

*Contributory negligence—Evidence—Inferences from facts.*

In the above case it appeared that after the accident the manhead was found leaning against the still at one side of the manhole, and that there was a lantern with the glass globe slightly cracked, and a light still burning in it at the time, about twenty-five feet beyond the place where the deceased was found enveloped in flames. From these facts it was claimed

as an irresistible inference that after deceased had removed the manhead he negligently passed in front of the open manhole with the lantern in his hands, thereby exploding the gas issuing from the opening. *Held*, that such an inference could not be drawn by the court, and that the case was for the jury.

*Risk of employment—Latent dangers—Appliances.*

An employee is not presumed to know whether his employer has furnished appliances which are reasonably safe and in ordinary use, in case of latent dangers, and in such case he is not chargeable with an assumption of the risks involved in the failure to provide them.

*Measure of damages—Charge of court.*

In an action by a widow to recover damages for the death of ·her husband, the court charged: " It is simply a question of compensation. What in your judgment, as well as you can ascertain from the evidence furnished you, will compensate her for the loss she has sustained. They have given you the age of this man, thirty-eight years of age. A man such as the testimony says was in active life, working daily, earning from $13.50 to $14.00 a week. You will see what under all the evidence will compensate this lady for the loss she has here sustained, and you will give her a verdict for that amount." The jury gave a verdict for $3,000. *Held*, that the charge was not improper.

Argued Feb. 6, 1893. Appeal, No. 410, Jan. T., 1892, by defendant, Hiram E. Lutz, from judgment of C. P. Delaware Co., March T., 1891, No. 31, on verdict for plaintiff, Bridget M. Bannon. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for personal injuries. Before WADDELL, P. J., of 15th judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

" [If Bannon was not negligent, if under the evidence you are satisfied that he did all he was required to do, and Mr. Lutz was negligent, then your verdict will be for the plaintiff and will be in such an amount as will compensate her for the injury or the loss she has sustained. There will be no wild or extravagant estimate of these damages; you must ascertain as near as you can what will compensate her for the loss she has sustained. It is simply a question of compensation. What in your judgment as well as you can ascertain from the evidence furnished you, what will compensate her for the loss she has sustained? They have given you the age of this man, thirty-eight years of age; a man, such as the testimony says, in active

life, working daily, earning from $13.50 to $14.00 a week, I think; that is the amount Mr. Lutz paid him while in his employ. You will see what, under all the evidence, will compensate this lady for the loss which she has here sustained, and you will give her a verdict for that amount.] [10] If, however, you should determine that there has been no negligence on Mr. Lutz's part your verdict will be for him, or if you conclude that John Bannon was negligent then your verdict will be for Mr. Lutz also."

Plaintiff's points were among others as follows :

"1. The plaintiff is entitled to a verdict if the jury believe that the death of her husband was due to the absence of steam in defendant's still, and that steam as a preventive of explosion was at the time in common and ordinary use, and was required to render the still reasonably safe according to the usages, habits and ordinary risks of the business, and that this was or ought to have been known to the defendant, and that the decedent by reason of inexperience and want of instructions from defendant or his agents was ignorant of the increased risk occasioned by the absence of steam, and that the risk was not apparent to him and he had no opportunity to ascertain it. *Answer :* I affirm that point; it is in accordance with the law as I understand it, and as I have laid it down to you." [1]

"2. An employer is bound to provide ordinarily safe and adequate machinery, and is guilty of negligence in failing to do his duty in this respect. If the jury find that steam as a preventive of explosions was at the time of Mr. Bannon's death in common and ordinary use, and was required to render the still reasonably safe according to the usages, habits and ordinary risks of the business, and that this was or ought to have been known to the defendant, and that Mr. Bannon would not have been killed had steam been used, the defendant was in law guilty of negligence. *Answer :* I affirm that point, gentlemen, with the addition that the use of steam as I understand it to be expressed here, was for making the stills safe in taking off the manheads. Not the general use of steam for distillation, but the use of steam so as to make the removal of these manheads safe. If that is the ordinary and general usage of the trade, then the point is correct." [2]

"3. If the jury find that the absence of a hinge or swing or

other safety appliance to the manhead was the cause of Mr. Bannon's death, and that some appliance of this kind for the protection of the man removing the heads of the stills was at the time in common and ordinary use, and was required to render the operation of removing the heads reasonably safe according to the usages, habits and ordinary risks of the business, and that this was known or ought to have been known to the defendant, he was in law guilty of negligence in failing to provide some safeguard or appliance for the protection of his men. *Answer:* I affirm that point, as you will see it is in accordance with what I have already expressed to you." [3]

Defendant's points were among others as follows:

" 4. If the jury believe that Bannon exposed himself in front of the open still after he had removed the head and placed it on the platform, he was guilty of negligence, and the plaintiff cannot recover. *Answer:* I do not feel at liberty to go to that extent. You must ascertain from all the evidence in the cause whether or not John Bannon was guilty of negligence; if he was, then, as I have said to you, he cannot recover, and those who now represent him cannot recover." [4]

" 6. The employer is not liable for the consequences of a dangerous business; the risks and dangers of the business are all assumed by the employee." Refused. [5]

" 7. If the danger be open, permanent and visible, the employee assumes it, and if he is as much aware of the nature of the machinery as the employer he cannot recover, even if the machinery be less safe than some other in general use, or there is a safer mode of doing the business. *Answer:* I cannot affirm that point in its broad terms. I do not regard that as the position of the courts on this question. I must disaffirm the seventh point." [6]

" 8. If the employee thinks that his employer is conducting his business in an unsafe way it is his duty to leave it, and he cannot recover for injuries received by reason of the kind of machinery, or mode of doing business which has been used and practised for several years, and with which the employee was familiar. *Answer:* I feel at some loss, gentlemen, to know what to do with that point. In some particulars, it is in my judgment correct, and in others it is incorrect. In my judgment if the employee thinks that his employer is conducting

his business in an unsafe way, then it is his duty to quit it;
he cannot, in other words, dictate to his employer how to con-
duct the business; but it is the duty of the employer to furnish
proper machinery to conduct it.   In other words, I make a dis-
tinction between a man conducting his business, and furnish-
ing appliances with which to conduct it.   He can conduct it as
he thinks proper, and if the employee don't like that way he
must leave it.   But when he employs a man to work for him,
the law imposes upon him the duty of furnishing the proper
appliances with which to do that work.   That is a duty which
he cannot avoid the responsibility of assuming." [7]

"10. If Bannon knew that this still was operated without
hinges or cranes to the heads, and without steam injections,
and under the evidence he was bound to know it, then he as-
sumed the risks of the business operated without them, and
Mr. Lutz is not guilty of negligence in not providing them,
and the plaintiff cannot recover.   *Answer:* I must negative
that point, gentlemen, as you will see from the points I have
already laid down." [8]

" Under all the evidence in the case the verdict should be
for the defendant.   *Answer:* I cannot say that, gentlemen; I
have nothing to say which way the verdict shall be.   That
would require me to take the case entirely out of your hands,
and I think it is my duty to submit the question to you under
the instructions I have given you, and I therefore leave the
case in your hands, again warning you against any sympathy
on the one side or the other entering into your minds.   This is
a mere question of business.   We are called on to perform du-
ties, pleasant or unpleasant, however they may be, they are
imposed upon us by the law, and you are not permitted to allow
your sympathies to be for the one side or the other.   You will
take the case, gentlemen, and make such disposition of it as
the law and evidence will warrant." [9]

Verdict and judgment for plaintiff for $3,000.   Defendant
appealed.

*Errors assigned* were (1–10) instructions, quoting them.

*Geo. B. Lindsay,* for appellant, cited: Bemisch v. Roberts,

143 Pa. 1; Diehl v. Iron Co., 140 Pa. 487; Sykes v. Packer, 99 Pa. 465; NewYork, Lake Erie & Western R. R. v. Lyons, 119 Pa. 324; Hoffman v. Clough, 124 Pa. 505: Rummell v. Dilworth, 111 Pa. 343; Myers v. B. & O. R. R., 150 Pa. 386; Hauser v. Central R. R., 29 W. N. 471.; Carroll v. Pa. R. R., 12 W. N. 348; Pa. R. R. v. Mooney, 126 Pa. 244; Marland v. Pittsburgh & Lake Erie R. R., 123 Pa. 487; Mensch v. R. R., 150 Pa. 598; Kehler v. Schwenk, 144 Pa. 348; Ford v. Anderson, 139 Pa. 261; Melchert v. Smith Brewing Co., 140 Pa. 448; Augerstein v. Jones, 139 Pa. 183; Simpson v. Pitts. Locomotive Works, 139 Pa. 245; Pittston Coal Co. v. McNulty, 120 Pa. 414; West Mahanoy Township v. Watson, 116 Pa. 344; Brossman v. Lehigh Valley R. R., 113 Pa. 490; P. W. & B. R. R. v. Keenan, 103 Pa. 124; Green & Coates St. Pass. Ry. v. Bresmer, 97 Pa. 103; Pittsburgh & Connellsville R. R. v. Sentmeyer, 92 Pa. 276; Lewis v. Seifert, 116 Pa. 628; Drew v. Coal Co., 3 Cent. R. 389; Hart v. Coke Co., 131 Pa. 125; Hawk v. R. R., 11 Atl. R. 459; Mack v. St. Ry., 8 Pa. C. C. R. 305; Titus v. R. R., 136 Pa. 618; Lehigh Coal Co. v. Hayes, 128 Pa. 294; Iron Ship Building Works v. Nuttall, 119 Pa. 149; P. & R. R. R. v. Hughes, 119 Pa. 301; P. & R. R. R. v. Adams, 89 Pa. 31.

*O. B. Dickinson,* for appellee, cited: Titus v. Bradford R. R., 136 Pa. 618; Rummell v. Dilworth, 111 Pa. 343; R. R. v. Agnew, 11 W. N. 394; R. R. v. Keenan, 103 Pa. 124; Mullan v. Steamship Co., 78 Pa. 25; Bier v. Standard, 130 Pa. 446; Morris v. Indianapolis R. R., 10 Bradw. 389; Galveston R. R. v. Garrett, 73 Texas, 262; Chicago R. R. v. Hines, 132 Ill. 161; McDonald v. R. R., 41 Minn. 439; Johnson v. Water Co., 71 Wis. 553; Jones v. Old Dominion Cotton Mills, 82 Va. 140.

OPINION BY MR. JUSTICE McCOLLUM, November 6, 1893:

It is alleged by Bridget M. Bannon, appellee, that on the 22d of February, 1889, her husband, John Bannon, lost his life in the service and through the negligence of Hiram E. Lutz, appellant, who then owned and operated a refinery known as the Delaware Oil Works. It appears that Bannon entered the service of Lutz as assistant stillman, about two months before his death, and that in the performance of his duties as such he

was required, inter alia, to remove the manheads from the stills
from three to four hours after the fires were drawn.   About half
past twelve o'clock in the morning of the day of his death his
fellow workmen were startled by an explosion of gas in one of the
stills in his charge, and on going to the place where the explo-
sion occurred, they found him enveloped in flames on the floor
of the refinery, directly in front of, and about twenty-five feet
from the open manhole in still No. 2.   They extinguished the
flames and conveyed him to his home, where he died in the even-
ing of the same day.   It is a natural and just conclusion from
all the evidence that his death was caused by the explosion.
The trial in the court below resulted in a verdict and judgment
against Lutz, from which he appealed.   The substantial ques-
tions raised by the appeal are whether the evidence is sufficient
to warrant a finding that there was negligence on the part of
the employer, which in the absence of contributory negligence
on the part of the employee was the proximate cause of the lat-
ter's death, and if so, whether the evidence of contributory
negligence is such as would have justified the learned judge of
the trial court in directing a verdict for the former.   The al-
leged negligence of the employer was his failure to provide
such appliances for opening the stills and preventing explosions
as it is claimed were in common use and necessary to render
the work of opening them reasonably safe according to the
usages, habits and ordinary risks of the business.   The appellee
submitted evidence to show that it was customary to use steam
in the stills, in the process of distillation, and for the protec-
tion of the men in removing the manheads, and when it was
used for the latter purpose only, it was introduced after the
fires were drawn.   It also appeared in the evidence submitted
by her that there was in common and ordinary use a contrivance
by means of which the stillman was enabled to remove the man-
head without lifting it from its place or standing immediately
in front of it, and that this in most refineries was a crane or
hinge on which the manhead would swing away from the man-
hole when the bolts by which it was fastened to the still were
taken out.   It was further shown by the evidence on the part
of the appellee, that at the time of the explosion complained of
there was no such contrivance for the removal of the manheads
on the stills in the Delaware Oil Works, and that while Bannon

was employed there steam was not used in the process of distillation, or after the fires were drawn. The manheads weighed from eighty to one hundred pounds each, and Rufus F. Purdy, who was in the service of Lutz about seven months as assistant stillman, testified that he was not able to take them off without standing in front of them. He also testified that he complained to Miller, the manager of the works, of the absence of the appliances in ordinary use in oil refineries for the protection of the stillman in taking off the manheads, but that nothing was done while he was there to render the work of removing them reasonably safe. A like complaint, coupled with a request that steam be introduced in the stills was made without effect by William Ash, a stillman in the service of Lutz for six years. But we need not refer in detail to all the evidence on this point. We think it is sufficient to warrant the conclusion reached by the jury that the employer was negligent in failing to provide the ordinary and well known appliances in common use in oil refineries for the protection of the workmen in the performance of their duties.

It seems very clear to us that the evidence of the alleged contributory negligence of Bannon furnished no ground for a peremptory instruction to the jury to find for the defendant. The theory that the explosion was due to his negligence rests on the undisputed showing that after its occurrence the front manhead of still No. 2 was on the platform and leaning against the still at one side of the manhole, and that there was a lantern with the glass globe slightly cracked and a light still burning in it at the time, and about twenty-five feet beyond the place where Bannon was found enveloped in flames. From these facts it is claimed there is an irresistible inference that after he had removed the manhead he unnecessarily and negligently passed in front of the open manhole with the lantern in his hands and both were thrown by the explosion to the place where they were afterwards found. But it was not for the learned judge of the court below to draw this inference and base a binding instruction upon it. He went far enough in this direction when in answer to the defendant's second point he told the jury that it was negligence per se to carry a lantern with a light in it in front of the open manhole, and if Bannon was injured while thus exposing himself the plaintiff could not recover.

We cannot say in view of the evidence in the case that any error was committed in the general charge or in the answers to the points regarding the risks assumed by the employee. The duty is on the employer to furnish his employees reasonably safe appliances with which to do the work assigned to them. It is also his duty to know what appliances are suitable and in common and ordinary use for the purpose. The employee has a right to assume that his employer will intelligently and faithfully discharge these duties. If the work in which he engages is new to him he should be instructed in it, and if he is not acquainted with the latent dangers incident to it they should be explained to him, that he may, so far as is consistent with a proper performance of it, avoid them. In such case he is not presumed to know whether his employer has furnished appliances which are reasonably safe and in ordinary use, and he is not chargeable with an assumption of the risks involved in the failure to provide them.

It is claimed by the appellant that the instructions in relation to damages were inadequate. It is true that they were brief, but it is equally true that they were not misleading or suggestive of any elements of damage improper for the consideration of the jury. The verdict was reasonable in amount, and we think the appellant has no just cause to complain of it.

The specifications of error are overruled, and the judgment is affirmed.