# Creachen, Appellant, *v.* Bromley Brothers Carpet Company.

*Negligence—Master and servant—Dangerous machine—Instruction as to use of machine—Province of court and jury.*

In an action by a boy between fifteen and sixteen years of age against his employer, a carpet manufacturing company, to recover damages for personal injuries sustained while operating a machine used for separating wool, it appeared that the machine in question was a dangerous one, and that it sometimes became choked with wool. Plaintiff testified that he was not instructed how to remove the "choke." After he had been at work a week the machine became clogged with wool, and for the first time he was required to remove the choke. In doing so his hand was caught and torn off. It appeared that the machine was in an imperfectly lighted room, and that at times the opening through which the choke could be safely removed, could not be seen because of flying scraps of wool covering the machine. Plaintiff testified that he did not know of this opening, and at the time of the accident could not see it. *Held*, that the case was for the jury and that it was error to grant a nonsuit.

*Nonsuit—Evidence—Conflicting statements.*

It is error for the court to grant a nonsuit because plaintiff's testimony is contrary to that which he gave in a former trial. The duty of passing on the credibility of the testimony is for the jury and not for the court.

Argued March 28, 1904. Appeal, No. 10, Jan. T., 1904, by plaintiff, from order of C. P. No. 5, Phila. Co., March T., 1901, No. 199, refusing to take off nonsuit in case of Francis Creachen by his next friend and mother, Elizabeth Creachen, v. Bromley Brothers Carpet Company. Before MITCHELL, C. J.; FELL, BROWN, MESTREZAT and THOMPSON, JJ. Reversed.

Trespass to recover damages for personal injuries. Before RALSTON, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*David Lavis*, with him *John T. Murphy* and *Howard A. Davis*, for appellant.—The question of the credibility of the witness is for the jury. The testimony of plaintiff on a former trial was not res adjudicata as to a subsequent trial, where the court has rendered such testimony nugatory by granting a new

trial. No question becomes res adjudicata until it is settled by a final judgment: Dougherty v. Lehigh Coal & Navigation Company, 202 Pa. 635; Freeman on Judgments, sec. 251.

The case was for the jury: Doyle v. Pittsburg Waste Co., 204 Pa. 618; Iseminger v. New Haven Water & Power Co., 206 Pa. 591; Hunterson v. Union Traction Co., 205 Pa. 568; Ely v. Pittsburg, etc., Ry. Co., 158 Pa. 233; Strader v. Monroe Co., 202 Pa. 626; Welsh v. Butz, 202 Pa. 59; Rummel v. Dilworth, 131 Pa. 509; Tagg v. McGeorge, 155 Pa. 368; Royer v. Tinkler, 16 Pa. Superior Ct. 457.

*Morton Z. Paul*, with him *Crawford & Laughlin*, for appellee.—It is legally presumed that a boy of the age of fifteen and one half years is of sufficient capacity to be sensible of danger and have the power to avoid it: Hunt v. Graham, 15 Pa. Superior Ct. 42; Nagle v. Allegheny Valley R. R. Co., 88 Pa. 35; Zurn v. Tetlow, 134 Pa. 213.

If the plaintiff falsely swore to statements which were untrue, to cover up defects in his evidence in the first trial, to such an extent as would assure his reaching the jury, the court had authority for this reason to enter the nonsuit: Demyer v. Souzer, 6 Wend. 436; Dunlap v. Patterson, 5 Cowen, 243; Bornscheuer v. Consolidated Traction Co., 198 Pa. 332.

OPINION BY MR. JUSTICE MESTREZAT, April 11, 1904:

Francis Creachen, the plaintiff, a minor between fifteen and sixteen years of age, was employed by the defendant company to work in its carpet manufactory in the city of Philadelphia. His duties were to operate a machine called a picker, used for separating wool. As described by one of the witnesses, the machine " is composed of a rotative cylinder with a number of projections—sharp steel projections—that come in contact with wool that is fed between two rollers, and that take the stock of wool from the apron. And while the rollers are holding it these flying projections of steel tear it apart and cause it to become disintegrated, so that it follows in the course of the manufacture." The wool is carried into the machine on a movable apron and after being torn into shreds by the steel teeth projecting from the cylinder, passes from the machine

into a conveyer pipe. The cylinder in this machine revolved very rapidly, making about one thousand revolutions per minute. The testimony shows that the room in which the machine was located was in the basement of the manufactory and was very imperfectly lighted. It further appeared from the testimony that the machine was at times covered with the flying scraps of wool so that the opening through which the " choke " should be removed could not be seen.

When the plaintiff was employed the foreman in charge of the work took him to the basement of the mill where the machine was located, and the plaintiff testifies as to what occurred there as follows : " He brought me over to the machine and showed me the back and front of the machine, and that is where I was to work, that was the machine I was to run ; I was to take charge of it, look after it and see it did not choke up, and if it choked up I was to remove the choke." He further testified that he was not instructed as to the danger in running the machine, the manner of operating it, or how the " choke " was to be removed from it. After he had been operating the machine about a week, it became clogged up with wool, the apron stopped and he was, for the first time since his employment, required to remove the " choke " from it. In doing so his hand was caught and torn off. This action was brought to recover damages for the injuries sustained, the plaintiff alleging that they resulted from the neglect of defendant company to warn him of the danger incident to the service and to give him adequate instructions as to the mode of operating the machine.

At the close of the plaintiff's testimony the trial judge granted a nonsuit, giving as his reason that the case " seems to me (him) to come within that line of cases where it is held that boys about mills may not put themselves in places of obvious or apparent danger to anybody and hold their employers responsible." The counsel for the appellee, however, say in their printed argument that " the learned court below nonsuited the plaintiff in this case, and the court in banc unanimously refused to remove it because they believed the plaintiff falsely swore to statements which were untrue, to cover up defects in his evidence in the first trial, to such an extent as would assure his reaching the jury." The counsel then pro-

ceed to sustain this reason for granting a nonsuit by argument and the citation of authorities. It is apparent from the trial judge's opinion assigning the reason for granting a nonsuit and from his examination of the plaintiff when on the witness stand, that he believed the latter's testimony to be untrue and that this belief had its influence in bringing the court to the conclusion to withdraw the case from the jury.

We do not agree that the reason assigned by the learned trial judge or that the one suggested by appellee's counsel warranted the court in granting a nonsuit. Both positions are clearly untenable.

We are convinced that this was a very dangerous machine to an inexperienced person operating it without proper instructions. A jury would have no difficulty in reaching that conclusion from the evidence produced at the trial. The duties of the plaintiff required him not only to place the wool on the movable apron to be carried into the machine, but also to remove the wool from the machine when it became clogged or choked up. This latter service was attended with much danger when performed by a person not familiar with the machine or the manner of operating it. It appears from the evidence that the proper way to remove the " choke " from it is through an opening at the top and in the back of the machine. The plaintiff, however, at the time he received his injuries had operated the machine but a week and had had no occasion to remove the " choke " and had no knowledge of the proper and safe way of doing it. As the evidence shows, at the time he attempted to remove the " choke " and was injured, he did not know of this opening and could not see it because it was covered by scraps of wool thrown from the machine. He therefore tried to relieve the machine by removing the wool from the opening into the cylinder, the only way apparent to him in which it could be done. The trial judge held this act of the plaintiff to be negligence, saying : " In removing the choke he put his hand through the small opening where there was a rapidly revolving cylinder with teeth in it, a place of obvious and apparent danger to anybody, because he knew there was machinery in there which was carefully covered, with the exception of the opening." The learned judge here assumes as a fact what the plaintiff testifies is not true, namely, that the

danger was apparent and that the plaintiff knew the character of the machinery inside of the picker. The plaintiff says in his testimony that he never saw inside the machine and did not know what was in there. He could not see the revolving cylinder, nor the steel teeth projecting from it. He further testifies : " Q. You knew that if a cylinder or something revolving there should strike your hand it would injure you, didn't you ? A. I didn't know it would strike my hand by putting my hand there. Q. But didn't you know that your hand would be likely to be struck by that thing that was revolving inside there, if you put your hand in ? A. I would never have put it in if I had known I was going to lose it." It is therefore clear that the testimony does not support the assumption of the trial judge that the opening through which the plaintiff attempted to remove the " choke " was a " place of obvious and apparent danger to anybody, because he knew there was machinery in there."

The testimony in this case if credible brings it within that class of cases in which it is held to be the duty of the master to give proper instructions to a young and inexperienced servant employed in operating a dangerous machine. These cases are numerous, the more recent of which are Tagg v. McGeorge, 155 Pa. 368 ; Welsh v. Butz, 202 Pa. 59 ; Doyle v. Pittsburg Waste Co., 204 Pa. 618. These decisions also hold that the instructions given such an employee must be sufficient to enable a person of his youth and experience to perform his duty with safety. If, however, an employee from experience in the use of the machine knows how to operate it and the danger in operating it, as well as how to avoid such danger, his employer is relieved from instructing him as to the performance of his duties. When an employee has such knowledge, necessity for instruction ceases and he assumes the risks incident to the service. If a youth knows and appreciates the danger of his employment and how to avoid it, his employer is not obliged to furnish him the same information by instructing him as to his duties. In the case at bar the necessity for instructions, and if necessary, whether they were adequately given, were questions for the jury.

The trial judge in his opinion granting a nonsuit says : " In spite of the change in the plaintiff's testimony since the last

trial, it is obvious to my mind that he was not injured in the operation of the machine. His duties in operating the machine were to put the wool on the apron, so that it would be carried into the machine." These conclusions are directly in conflict with the testimony of the plaintiff given on the last trial of the cause. His positive testimony is that he was employed to operate the machine and to remove the "choke," and that he was injured while performing these duties. It seems from a statement of the learned judge that on a former trial of the cause the plaintiff testified that his duties were simply to put the wool on the apron so that it could be carried into the machine. The judge assumed the duty of passing on the credibility of the plaintiff's testimony on the two trials, and found that his evidence at the last trial was false. We have been referred to no decision, and we know of none, that confers such authority on the court below. It was solely the province of the jury to determine the credibility of the witness,—what the plaintiff's duties were under his employment, and whether he was injured while in the performance of those duties. If the testimony of the plaintiff on the two trials was in conflict it was not within the scope of the judge's duties to say which was true and which was false. That duty rested with the jury, as is well settled by our own decisions. In Ely v. Pittsburg, etc., Railway Co., 158 Pa. 233, in which the testimony was "extremely muddled and conflicting," the present chief justice delivering the opinion says: "This testimony was contradictory, and the net result of it by no means clear. On part of it he (plaintiff) was plainly entitled to go to the jury; on the other part equally plainly he was not. Under these circumstances the case must go to the jury, whose province it is to reconcile conflicting statements, whether of the same or different witnesses, or to draw the line between them and say which shall prevail." In the recent case of Strader v. Monroe County, 202 Pa. 626, it was held that the court must submit conflicting testimony of the same or different witnesses to the jury; and in delivering the opinion DEAN, J., very truly and aptly says: "In trials of fact, if it were required that all testimony should be consistent, either with itself or that of other witnesses, but few cases would reach a jury."

The judgment is reversed with a procedendo.