CORNELIUS WILDER, by his next friend, JAMES S. WILDER, v. GREAT WESTERN CEREAL COMPANY, Appellant.

**Master and servant:** NEGLIGENCE. In an action for injury to an employé received in cleaning the rollers of an oat-meal mill, the evidence is reviewed and held sufficient to support a finding that defendant failed to properly warn plaintiff of the danger incident to the act.

**Dangerous machinery:** DUTY TO INFORM EMPLOYÉ. It is the duty of a master to instruct an unexperienced workman employed about machinery, concerning dangers which are not open and obvious, so that he may perform his task in safety.

**Assumption of risk.** An employé must have either actual or implied knowledge of the dangerous character of machinery or tools before he can be charged with an assumption of risk. In the instant. case the question was one for the jury.

**Contributory negligence.** A servant directed to do certain work may assume there is no hidden danger and he is not negligent in failing to investigate.

**Assumption of risk:** INSTRUCTION. Where a finding that defendant was guilty of negligence conclusively established the fact that plaintiff had nŏt assumed the risk, an instruction that plaintiff could recover if the injury resulted from defendant's negligence and without fault on his part, was not prejudicial though containing no reference to assumption of risk, or because inconsistent with another instruction, that if assumption of risk was establish plaintiff could not recover.

**Contributory Negligence:** INSTRUCTION. An instruction that plaintiff could not recover unless he had shown by a preponderance of the evidence that he was free from contributory negligence, was not objectionable as allowing a recovery, even though plaintiff was in fact negligent in some degree.

*Appeal from Webster District Court.*— HON. J. R. WHIT-
AKER, Judge.

WEDNESDAY, JULY 12, 1905.

REHEARING DENIED MARCH 20, 1906.

ACTION for damages · resulted in a judgment for the
plaintiff.    The defendant appeals.— *Affirmed.*

*Ryan, Ryan & Ryan,* for appellant.

*Healy Bros. & Kelleher,* for appellee.

LADD, J.— The defendant operated an oat meal mill
at Ft. Dodge, and the plaintiff, a boy of 19 years, had his
hand caught in one of its machines in September, 1902, and
so injured that amputation was necessary.    Prior to his
employment by defendant he had had no experience with
machinery other than that used on the farm.    From No-
vember, 1901, until the last of the following May, except
one month, he worked for defendant as a roustabout; that is,
helping load and unload cars, scooping coal, filling and
trucking sacks, moving machinery, and the like.    Begin-
ning in July, 1902, he acted as doorkeeper on the first floor
for six weeks; then for a month carried water for the men
on all the six floors; after that swept floors and cleaned sep-
arators or sieves on the upper three floors for a short time.
He was then transferred to the second and third floors,
where, for a couple of days, his work was about the same,
and he was then shown by the superintendent how to oil a
heated box over a journal to one of the rolling machines.
The superintendent also instructed him to " unchoke " the
feeder to this machine when it clogged up with groats (oats
with hulls off).    This machine need not be described farther
than to say that it contained seven sets of rolls, each about
ten inches in diameter, and that the machinery was housed

in wooden covering about nine feet high.   At the front there was a lid, six or seven inches wide and twenty-two inches long, which opened on hinges downward.   The rolls nearest the lid were about fourteen or sixteen inches back, turned toward each other, and on the day in question were set three-eighths or seven-sixteenths of an inch apart.   Oats were not being rolled, but groats were running through the machine as spouting, to be sacked for the shipment.

The superintendent illustrated to plaintiff by moving a stick or piece of iron over or between the rollers, and according to plaintiff, said:   " ' This chokes up down here. You want to unchoke it.   The dough balls accumulate, and you want to let the grain pass there.   You want to mash them, and use a stick, and not your hand.'   He made a movement while he was saying this.   He just did that way with his hand with the stick in it — just into the door when he opened it that way.   He moved his hand that way up and down.   After he told me that, he closed the shutter and walked away."

The superintendent testified:   " I told him that sometimes the dust would gather a little bit in between the rolls, and it would retard the flow of groats, and showed him how to remove the dust, and also told him to be very careful not to get his hand in there, and took a piece of sheet iron and showed him just exactly how to run the sheet iron along horizontally between the rolls so there would be no danger of getting his hand in, but told him to keep his hand out of there, because if he did get it in between the rolls it would take it off.   The shutter was open at the machine when I gave Wilder instructions.   We don't keep it shut when we run groats.   The implement we had at the time I instructed Wilder was a sheet iron.   Sometimes we used a hoop iron.   I used to use a prepared hoop iron similar to this, so he could take it and run it right in between the rolls. I furnished Mr. Wilder an implement of that kind — a strip of tin or sheet iron."

The plaintiff denied having been told what kind of an instrument other than a stick to use, and testified that at about two o'clock p. m. he noticed the closed lid bulging out, and opened it; that the inside was full of groats; and that he picked a stick about a half-inch in diameter from the floor, and proceeded to crush the " dough balls " and unclog the feeder. He had been at this but a few minutes when the stick was caught between the rolls and his hand drawn in and injured as stated. The claim for damages resulting therefrom is based on two grounds of negligence; i. e., failure to warn plaintiff of the dangers incident to doing the work, and omission to furnish him with a suitable implement with which to do it. These were put in issue by defendant, and it pleaded that the risk had been assumed.

I.   Taking up the allegations of negligence separately, appellant insists that the evidence was insufficient to support the verdict. That the use of a stick thicker than the

1. MASTER AND SERVANT: negligence; evidence.

distance between the rolls was dangerous, and that before permitting its use an inexperienced person should be cautioned of the danger that it might be caught between the rolls and the hand drawn in, were matters conclusively established by the evidence. Whether plaintiff was furnished a strip of iron about one thirty-second of an inch thick, seven-eighths of an inch wide, and about a foot long, like that customarily used, or was simply told to make use of a stick, was in dispute, and the finding of the jury necessarily conclusive. But it is said that in selecting the stick the plaintiff acted for himself, independent of defendant, and for this reason the latter is not chargeable with negligence in not supplying proper tools. This might be so had the superintendent given no directions. According to plaintiff's testimony, he was instructed merely to use a stick, and he selected one like that the superintendent had. If this was so, he was not acting independently, but under instructions as to what tool to use

in unclogging the feeder. A particular stick was not pointed out, nor was a particular one furnished; but from what was said, according to his version of the conversation, he was justified in inferring that he was to take any stick similar to that used by the superintendent. A stick is defined by Webster as " a small shoot, branch, separated, as by cutting, from a tree or shrub; . . . any long and comparatively slender piece of wood, whether in natural form or shaped with tools; a rod; a wand; a staff." Wood is ordinarily meant, and one would not infer, save under peculiar circumstances, that by the word " stick " a piece of iron was intended. If plaintiff's testimony be accepted as true — and the jury might have done so — he was directed to make use of a piece of wood. He selected such an instrument, then, as he was instructed to use, and not one of his own choosing. Because of the danger of being caught between the rolls and drawing the hand in, such an instrument was not a suitable appliance for cleaning the rolls, especially by an inexperienced person; and the jury's finding the defendant was negligent in this respect has support in the evidence.

II. The principle is well settled that the duty to warn an inexperienced employé is limited to those dangers which are not open and obvious, or which are not likely to be appreciated in the exercise of ordinary prudence. *McCarthy v. Mulgrew,* 107 Iowa, 76; *Hanson v. Hammell,* 107 Iowa, 171; *Newbury v. Mfg. Co.,* 100 Iowa, 441; *Yeager v. Ry.,* 93 Iowa, 1; *Beck v. Mfg. Co.,* 82 Iowa, 286.

2. DANGEROUS MACHINERY: duty to inform employé.

The plaintiff undoubtedly knew there were rolls within the wooden casing or housing, and as he had oiled a hot box over the shaft, about three inches in diameter, of one of these rolls, he must have learned that there was machinery inside and in motion. A wheel about a foot in diameter and some eight inches wide, on which the belt from the line shaft ran, was attached to the shaft. At the other end

was a cogwheel, which articulated into a similar wheel attached to the shaft of the other roll, and by this means turned it. The rolls in revolving rapidly caused a humming noise. But, as before stated, the lid was at the end, and opened down. The plaintiff had never looked into the "housing" before that morning. The front roll was obscured by a board and some cotton belting. Over the back roll groats were pouring at the rate of several bushels a minute, so that the jury might have concluded that neither when shown by the superintendent nor when he made use of a stick himself was he able to see the rolls or their relative location. The room was poorly lighted. There was no defect in the machinery.

The charge of negligence in failing to properly instruct of necessity has relation to the particular work to be done. Some duties about the machine doubtless might have been performed without warning, and a skilled machinist might have ascertained the perils of the task exacted of plaintiff without instruction. But he had had no previous experience, as the superintendent well knew. To accomplish what was required, he must insert his hand within the opening. What was inside, save the groats, might not have been seen, and, even though he knew of the location of the shaft and wheels on the outside, what was on the inside, and its location, was a matter of conjecture and, in view of his youth and inexperience, we think the jury might well have found that the defendant owed him the duty of warning him of the dangers attending the doing of the work. Especially is this true with respect to the use of a stick instead of a piece of iron, for an inexperienced person would not be likely to appreciate the peculiar danger involved in the use of a piece of wood a trifle thicker than the distance between the rolls. Because of the natural effort to retain the stick, upon being caught between the rolls, the hand might be drawn in. We think the facts of the case, if as disclosed by plaintiff's evidence, were such as to bring it within the well-

established rule devolving upon a master the duty of so instructing an inexperienced servant employed about dangerous machinery as to enable him to perform his task in safety. Authorities in support of this principle are unnecessary, but the following decisions will be found somewhat analogous in their facts: *Creachen v. Carpet Co.,* 209 Pa. 6 (57 Atl. 1101); *Le Beau v. Mfg. Co.* (R. I.) 57 Atl. 1092; *Buoy v. Elevator Co.,* 68 Kan. 436 (75 Pac. 466); *Joyce v. American Writing Paper Co.,* 184 Mass. 230 (68 N. E. 213); *Sauvagean v. River Spinning Co.* (C. C.) 129 Fed. 963.

III. Every person, in undertaking to work, assumes the risks ordinarily incident to his employment; that is, he agrees to labor in the situation and with the tools provided 3. ASSUMPTION in so far as the condition of these are apparent OF RISK. or may be ascertained by the exercise of ordinary diligence and care. But he does not assume the risk of using instruments the danger in which is known to the master and unknown to the servant. Knowledge, either actual or imputed, because of what should have been known by the exercise of ordinary prudence, is absolutely essential before the risk may be said to have been assumed. *Stomne v. Hanford Produce Co.,* 108 Iowa, 137. The existence of such knowledge is inconsistent with the finding that defendant was negligent in failing to instruct, for, had plaintiff been aware of the danger, instruction would have been unnecessary. Therefore in holding that the evidence as to negligence in failing to warn plaintiff of the dangers was sufficient to carry the case to the jury, we have, in effect, decided that the issue, in so far as supported by the evidence, if at all, as to whether the plaintiff assumed the risk, was also for the jury.

IV. The same may be said of the contention that the plaintiff was guilty of contributory negligence. True, he 4. CONTRIBUTORY did not investigate the machinery, but he had NEGLIGENCE. the right to assume, from the order to do the work, that there was no danger not apparent, and that he

could perform it in safety. See *Newbury v. Mfg. Co.,* 100 Iowa, 441; *Strong v. Ry.,* 94 Iowa, 380.

V. The instructions were contradictory in form, in that the jury was told that if the injury was caused by defendant's negligence, without fault on plaintiff's part, a

5. ASSUMPTION OF RISK: instruction. verdict should be returned for the latter, without mentioning the defense of assumption of risk, and in another paragraph that, if such defense were established, the verdict should be for defendant. See *Quinn v. Ry.,* 107 Iowa, 710; *Christy v. D. M. City Ry. Co.,* 126 Iowa, 428. The case is to be distinguished from those cited, however, in that the finding that the defendant was negligent conclusively rebutted the charge that plaintiff has assumed the risk. This point has already been explained, and all that need be added is that, as the issue of assumption of risk was necessarily involved in that of defendant's negligence, the jury, in returning their verdict, must have found against defendant on both issues, and therefore it was error without prejudice to exclude the issue as to assumption of risk in stating recovery might be had upon a finding that the injury occurred through defendant's negligence without fault on the part of plaintiff. No question as to assumption of risk was involved in the other charge of negligence. If the superintendent furnished plaintiff with the iron strip, the jury necessarily resolved that issue in defendant's favor. If he did not, and on the contrary instructed him to use a stick, as claimed by plaintiff, and he did so, he did not assume the risk, for the evidence that he was not apprised of the danger attending the use of a stick is uncontroverted. The principle was well stated in *Bannon v. Lutz,* 158 Pa. 166 (27 Atl. 893):

The duty is on the employer to furnish his employés reasonably safe appliances with which to do the work assigned to them. It is also his duty to know what appliances are suitable and in common use for the purpose. The employé has a right to assume that his employer will intel-

ligently and faithfully discharge these duties. If the work in which he engages is new to him, he should be instructed in it; and, if he is not acquainted with the latent dangers incident to it, they should be explained to him that he may, so far as is consistent with the proper performance of it, avoid them. In such case he is not presumed to know whether his employer has furnished appliances which are reasonably safe and in ordinary use, and he is not charged with an assumption of the risks involved in the failure to provide them.

VI. By the eleventh instruction the jury was told that, unless plaintiff " has shown by a preponderance of the evidence that he was not guilty of a failure to exercise such ordinary care, or that if he was, that such negligence in no way contributed to his receiving the injury that he complains of, then he is not entitled to recover in this case." This was correct, and not open to the criticism of allowing recovery even though guilty of slight negligence. See *Jerolman v. Ry.*, 108 Iowa, 179. Unless his fault, if any, contributed in some way to the injury, it had no place in the case. The use of the double negative in the thirteenth instruction, manifestly through inadvertence, was favorable, rather than otherwise, to defendant, In answer to special interrogatories the jury found that plaintiff was instructed to keep the rolls free and open so the groats would freely pass between the rolls, and that he selected the implement with which he attempted to clean the rolls. The court rightly refused to submit the questions as to whether he failed to keep the rolls open so the groats would freely pass between them, and, if so, to state whether such failure caused the groats to cover up the rolls at the time he was injured. The interrogatories did not call for ultimate facts. See *Morbry v. Ry. Co.*, 116 Iowa, 84. If both had been answered favorably to the defendant, it would not necessarily follow that this was due to his negligence, or that, if he kept the feeder clear, he must have observed the relative position of the rolls. The record is without prejudicial error.— *Affirmed.*

6. CONTRIBUTORY NEGLIGENCE: instruction.