Kobierowski, Appellant, *v.* Commonwealth Mutual Insurance Co. of Pennsylvania.

Argued March 15, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Donald M. Bowman,* with him *Gold & Bowman,* for appellant.

*J. Webster Jones,* for appellee.

OPINION BY WOODSIDE, J., May 21, 1954:

This comes to us on appeal from the refusal of the Municipal Court of Philadelphia to take off a compulsory nonsuit.

The action was based upon a policy of collision insurance.

The undisputed facts are as follows: The defendant, through its duly authorized agent, Sneyd Underwriters Co., issued an insurance policy to the plaintiff, William C. Kobierowski, for comprehensive coverage of a 1942 Lincoln Sedan for a period of time from December 19, 1951 to December 19, 1952.

On January 16, 1952, plaintiff traded the said Lincoln Sedan for a 1947 Chevrolet Club Coupe. The defendant was duly notified of this transaction and issued an endorsement transferring the insurance coverage to the Chevrolet Club Coupe and added a provision for collision insurance with a Fifty ($50) Dollar deductible clause. Thereafter, on April 8, 1952,

plaintiff purchased a 1950 Chevrolet Sedan, for which he traded in his 1947 Chevrolet Club Coupe. The next day, April 9, 1952, plaintiff notified the defendant's agent, Sneyd Underwriters Co., by telephone of this new transaction and asked that a new endorsement be issued transferring his insurance coverages to the new car. The defendant insurance company was notified of the purchase of the 1950 Chevrolet Sedan and issued an endorsement transferring the insurance coverage to plaintiff's sedan.

On May 21, 1952, plaintiff's Chevrolet Sedan was almost completely demolished in an automobile collision. Immediately thereafter plaintiff notified the defendant insurance company and made demand for payment of damages, as set forth in his insurance policy and the endorsements attached thereto. The defendant, however, refused to pay anything to the plaintiff for the repair of his said automobile, claiming as its only basis for denial of liability that it had not been notified of an encumbrance against the 1950 Chevrolet Sedan held by the Willard Chevrolet Co. There was such an encumbrance.

The only disputed fact in issue at the trial was whether the insurance agency had been informed of the encumbrance. The plaintiff testified that he called the Sneyd Underwriters Company, dialing the telephone number appearing on the face of the policy as that of the said company. He then testified as follows: "A. A girl answered the phone, I said,[1] 'Sneyd Underwriters Company.' I told them my name was William Kobierowski, I want to make a change in the policy, I gave her the number . . . The number of the

---

[1] The questions of counsel and the answers of the witness, which followed this testimony indicate this was meant to be "she said". At least it seems all parties proceeded upon that assumption both at trial and argument.

policy . . . FA 19190 . . . She said, 'Just a moment'. She is gone a couple of seconds, came back, said, 'All right, Mr. Kobierowski'. I told her I just purchased a 1950 Chevrolet two door sedan, gave her the number, told her it would be financed from the Willard Chevrolet, 'Please send them notice. It will be covered by insurance?' She said, 'Yes. We will take care of everything.' 'Anything else you need?' She said, 'No, that's all'. I said, 'Thank you', and hung up."

That the plaintiff called the Sneyd Underwriters, spoke to a girl there and asked to have the insurance transferred is not disputed. Neither is it disputed that the defendant received information concerning the transfer and issued an endorsement to the policy covering the car.

The plaintiff called as his witness, Pearl Grace, an employe of the insurance agency, who admitted receiving the call and the information concerning the transfer. She denied that anything was said about an encumbrance.

Counsel for defendant admitted that there was an endorsement placed on the policy covering the 1950 Chevrolet Sedan for which an additional premium was charged.

The only dispute was whether the plaintiff told Pearl Grace during the telephone conversation that the 1950 Chevrolet Sedan was encumbered. He says he did; she says he did not. That is a jury question.

There cannot be the slightest doubt that the telephone call was made to the insurance agency and that information concerning the 1950 Chevrolet Sedan was given during the telephone conversation to the defendant's agent and subsequently received by defendant. Despite this fact counsel for the insurance company cross examined the plaintiff at great length in an ap-

parent effort to discredit plaintiff's testimony that the call was ever received by defendant's agent.

A number of pages of the testimony was devoted to cross examining the plaintiff on the sole question of whether the girl who answered the telephone mentioned the name of the insurance agency. Insisting that at a previous hearing the plaintiff had testified he didn't remember whether the girl who answered the telephone said, "Sneyd Underwriters," while at this hearing he testified she did say, "Sneyd Underwriters", counsel for defendant kept pressing for an explanation. After defendant testified he didn't remember making such a statement at the prior hearing and that he was sure now that she did mention the agency, and that he may have been confused before, the counsel for the defendant then asked, "The fact you told something differently at the time of the hearing—does that have any effect on your mind now?" The plaintiff replied, "Yes" and to the final question, "What effect does it have?" he replied, "I could have been lying there, or I could have been lying here."

On the basis of this statement alone Judge BONNI-WELL, the trial judge, entered a nonsuit saying he could not permit the jury to guess which time the plaintiff was "lying".

It should be noted that the only "difference", if there was any, in the plaintiff's testimony, and the only circumstance to which he could have been referring in his testimony was whether the girl answered, "Sneyd Underwriters."

It was immaterial whether she did or not. Even if she did not so answer, the testimony concerning the telephone conversation was admissible.

It appears from the evidence that the plaintiff dialed the telephone number shown on the policy to be that of defendant's agent; that the person answer-

ing took the information about the policy; that the defendant acted upon information given during the telephone conversation; and that an employe of defendant's agent admitted receiving the telephone call in question.

Ordinarily the identity of the person with whom the witness carried on a telephone conversation must be established. This is generally done by recognition of the party's voice. But there are many other ways in which it can be established. Where the witness has called for a designated person at his place of business and the one carrying on the conversation claims to be the person called for, the conversation, if otherwise competent, is admissible. *Pennsylvania Trust Company v. Ghriest*, 86 Pa. Superior Ct. 71, 74 (1926). Another satisfactory method of identification exists in the introduction of the telephone company records. *Smithers et al. v. Light*, 305 Pa. 141, 145, 157 A. 489 (1931). A telephone conversation with an unidentified person has been received in evidence where the circumstances following the conversation indicated that the person who spoke was speaking with authority. *Reach v. National Bedding Co.*, 276 Pa. 467, 471, 120 A. 471 (1923).

A telephone conversation was admitted where the call was placed for a Mr. McDonough and another unidentified person said Mr. McDonough was not there but he would take "whatever information was necessary", and after taking the information said, "All right, we will take care of it." *Wahl v. State Workmen's Insurance Fund et al.*, 139 Pa. Superior Ct. 53, 56, 11 A. 2d 496 (1939).

Where the witness is the recipient of the call the rule is more stringent. See *Burton v. Pacific Mutual Life Insurance Company*, 368 Pa. 613, 617, 84 A. 2d 310 (1951), *Midland Credit Company v. White*, 175 Pa. Superior Ct. 314, 104 A. 2d 350 (1954).

As Professor John Henry Wigmore says: "There is much to be said for the circumstantial trustworthiness of mercantile custom by which, in average experience, the numbers in the telephone-directory do correspond to the stated names and addresses, and the operators do call up the correct number, and the person called does in fact answer. These circumstances suffice for some reliance in mercantile affairs; and it would seem safe enough to treat them in law as at least sufficient evidence to go to the jury, just as testimony based on prices-current is received. This view has received judicial support." Wigmore on Evidence, Third Edition, Pages 617, 618, §2155.

Certainly when it is admitted by the recipient that the telephone call in question was received, the witness who made the call may testify as to what was said in that telephone conversation.

As the telephone conversation in this case was clearly admissible, it is immaterial whether the recipient of the call identified either herself or the company for which she worked.

Thus, even putting the plaintiff's testimony in the worst light, he admitted lying about an immaterial matter.

It is true as stated by the court below that where the burden of proof is upon the plaintiff to establish certain facts before a recovery can be had, the court may not submit evidence which will merely enable a jury to guess at a fact in favor of a party who is bound to prove it. But, as all the cases cited by the lower court clearly indicate, the "fact" must be one which the plaintiff is bound to prove. *Musleva v. Patton Clay Manufacturing Company (No. 1)*, 338 Pa. 249, 12 A. 2d 554 (1940), *Lemak et al. v. Pittsburgh*, 147 Pa. Superior Ct. 62, 23 A. 2d 354 (1941), *Zenzil et al.*

*v. Delaware, Lackawanna & Western Railroad Company,* 257 Pa. 473, 101 A. 809 (1917).

The plaintiff here was not bound to prove that the girl answering the telephone replied "Sneyd Underwriters Company." Assuming he admitted he lied about this point in this case, his other testimony would still be for the jury.

Where a plaintiff himself is the witness, and his uncorroborated testimony is so conflicting as to render it impossible to make an essential finding therefrom it is proper for the court to instruct against the plaintiff, but *only* where the unreconcilable testimony *refers to a subject as to which the burden of proof was on the plaintiff. Mundano v. Phila. Rapid Transit Co.,* 289 Pa. 51, 59, 137 A. 104 (1927).

Even one convicted of perjury, if not yet sentenced, may testify. *Commonwealth v. Billingsley,* 160 Pa. Superior Ct. 140, 147, 50 A. 2d 703 (1947).

It has long been held to be error for a court to grant a nonsuit because plaintiff's testimony is contrary to that which he gave in a former trial. *Creachen v. Bromley Brothers Carpet Company,* 209 Pa. 6, 57 A. 1101 (1904).

The plaintiff's final answer might well have caused the jury to conclude that his testimony on the disputed point was not worthy of belief. On the other hand it might have concluded that the answer was facetious or that the plaintiff used the word "lying" not in its true dictionary sense of deliberate falsehood but in its quite commonly used, although less accurate, sense of merely "not true."

The jury should have been permitted to pass upon this case.

The judgment is reversed with a procedendo.