538 A.2d 1363

**COMMONWEALTH of Pennsylvania**

v.

**Richard SULLIVAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1987.

Filed March 16, 1988.

Richard C. Tinucci, Media, for appellant.

Ann A. Osborne, Assistant District Attorney, Media, for Com., appellee.

90

Before WIEAND, KELLY and HESTER, JJ.

WIEAND, Judge:

Richard Sullivan was tried by jury and was found guilty of involuntary deviate sexual intercourse, indecent assault, indecent exposure, unlawful restraint, and corrupting the morals of a child as a result of sexual acts, particularly anal intercourse, committed upon a ten year old, female child during the three month period between May and July, 1985.[1] Post-trial motions were dismissed, and Sullivan was sentenced to serve a term of imprisonment for not less than five years nor more than ten years. On direct appeal, he contends that the verdict was contrary to the weight of the evidence and that several evidentiary rulings by the trial court were erroneous.

"The grant of a new trial on the ground that the verdict is against the weight of the evidence is generally committed to the sound discretion of the trial court." *Commonwealth v. Larew*, 289 Pa.Super. 34, 37, 432 A.2d 1037, 1038 (1981). In reviewing the weight of the evidence we must look at all the evidence. *Commonwealth v. Gonce*, 320 Pa.Super. 19, 26 n. 1, 466 A.2d 1039, 1043 n. 1 (1983). To warrant a new trial, "it must appear from the record that the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative, so that right may be given another opportunity to prevail." *Commonwealth v. Barnhart*, 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981).

The child victim, who suffered from a mild learning disability, testified to fifteen or twenty instances of sexual contact with appellant, who was a neighbor and a friend of her parents. Because of this parental friendship, her parents initially said that they would not press charges if appellant would obtain psychiatric help. When the psychiatric appointments were discontinued, however, the victim's parents decided to prosecute. Dr. Steven Ludwig, a pediatrician, did not examine the child until approximately ten months after the abuse had been discovered. He testified that he found a "skin tag" in the child's rectal area which

1. Sullivan was found not guilty on a charge of rape.

suggested a healed trauma consistent with penile-rectal contact. On the other hand, Dr. Charles Heil, who examined the child in July, 1985, found no evidence of sexual abuse and a hymen which had not been broken. It is also true that appellant denied the accusations. The trial court which heard the witnesses, however, did not find the jury's verdict shocking, and our own review of the record does not disclose any basis for reaching a contrary conclusion.

■ Appellant argues that Dr. Ludwig's examination of the victim on April 9, 1986 was too remote and that his findings, therefore, should have been excluded from the jury's consideration. "The question of remoteness, which is basically one of relevance, is properly vested in the discretion of the trial court, and its decision thereon will not be reversed unless a clear abuse of discretion is shown." *Tolentino v. Bailey*, 230 Pa.Super. 8, 13, 326 A.2d 920, 922 (1974) (footnote omitted). Although a medical examination closer in time to the alleged abuse would have been preferable, it cannot be said that the trial court's ruling was an abuse of discretion. Dr. Ludwig based his opinion that the child had been abused on a combination of social and psychological factors and said that his physical finding regarding the "skin tag" was merely a small piece of supportive evidence.[2]

Appellant also contends that it was error to permit appellant's wife, who testified as a defense witness, to be cross-examined about inter-spousal sexual relations including, specifically, requests by appellant to his wife to engage in anal intercourse. However, appellant failed to object to this cross-examination. Therefore, any objection thereto was waived. *Commonwealth v. Clark*, 347 Pa.Super. 128, 131, 500 A.2d 440, 441 (1985), *allocatur granted*, 512 Pa. 1, 515 A.2d 1320 (1986).

The victim's parents initially determined that they would not prosecute appellant if he agreed to seek psychiatric help. Appellant testified that he had made an appointment

2. Appellant's objection in the trial court and his argument on appeal are limited to the remoteness of Dr. Ludwig's finding.

with an abuse counselling clinic but had been arrested before he could keep the appointment. In an effort to rebut this testimony, the Commonwealth called Patricia Rygiel, an intake worker at Media Child Guidance.[3] She identified an intake report which had been prepared upon receipt of a call received from a person identifying himself as Richard Sullivan, 1105 Third Avenue, Prospect Park, Pennsylvania, 19076, and having a birth date of January 6, 1955.[4] The witness also testified that, according to the intake report, an appointment had been made for January 23, 1986, but that the appointment had not been kept. In addition, the witness, over defense objection, was permitted to read from the intake report as follows:

Q. Patty, when you received this phone call, did you inquire as to why this individual was requesting....

A. Yes, I did.

Q. And what was the response?

A. He said his problem was that he had a high sex drive.

Q. Anything else as far as his problem?

A. And then I said, "Well, what do you mean by that?" And he said that his neighbors had accused him of molesting their daughter and that they were asking him to come for treatment.

On appeal, Sullivan argues that the trial court's allowance of this testimony was prejudicial error. More specifically, he contends (1) that because the witness was reading from a report, her testimony was hearsay; (2) that there was no evidence that the caller in fact was the defendant; and (3) that the caller's statement that he had a high sex drive was improper rebuttal, irrelevant, and unfairly prejudicial. The Commonwealth responds that the report was admissible as

3. Whether it was proper to attempt to attack appellant's credibility by contradicting his testimony on a collateral matter has not been argued, and with respect thereto we express no opinion.

4. The intake report was neither offered nor received in evidence, and the record discloses that the witness did not testify to the precise date on which the call had been received.

a business record and, because it was an admission made by appellant, was relevant to attack his credibility.

The Uniform Business Records as Evidence Act provides as follows:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108(b). In *Ganster v. Western Pennsylvania Water Company,* 349 Pa.Super. 561, 504 A.2d 186 (1985), we said,

The rule

is justified on grounds analogous to those underlying other exceptions to the hearsay rule. Unusual reliability is regarded as furnished by the fact that in practice regularly kept records have a high degree of accuracy (as compared to other memoranda). The very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision; if of a financial nature, the records are periodically checked by balance-striking and audits; and in actual experience the entire business of the nation and many other activities function in reliance upon records of this kind.

McCormick on Evidence § 306, at 872 (3rd ed. 1984).

To satisfy the requirements of the rule, a business record in the form of memoranda reports or data compilations must be made at or near the time of the events reflected in the records. "A determination as to whether the recording of the event is sufficiently contemporaneous with the event is left to the broad discretion of the trial court." *In re Estate of Indyk, supra* 488 Pa. [567] at 572 n. 2, 413 A.2d [371] at 373 n. 2 [(1979)]. See: *Henderson v. Zubik,* 390 Pa. 521, 524, 136 A.2d 124, 126 (1957).

The records must also be kept in the course of a regularly conducted business, and it must be the regular practice of the business to keep records of the type offered into evidence. "In the regular course of business" includes entries made systematically and as part of a regular routine which requires the recording of events or occurrences, the reflection of transactions with others. These essentials must be established by testimony of the custodian or of another qualified witness. It is not essential for the admission of evidence under this rule, however, to produce either the person who made the entries in question or the custodian of the record at the time the entries were made. The witness need only possess adequate knowledge of the regularity of the record keeping process to qualify the records under the Act. *In re Estate of Indyk, supra* 488 Pa. at 573, 413 A.2d at 373-374.

Finally, it is essential that no lack of trustworthiness appear in the source of information or the method or circumstances of preparation. The factors to be weighed in evaluating the trustworthiness of business records include whether there was either motive or opportunity to prepare an inaccurate record, the period of delay prior to preparation of the record, the nature of the information recorded, the systematic checking, whether there was regularity and continuity in maintaining the records and whether the business relied on them. "In the case of records kept in the regular course of business the circumstantial guarantee of trustworthiness arises from the regularity with which they are kept." *Fauceglia v. Harry, supra* 409 Pa. [155] at 160, 185 A.2d [598] at 601 [ (1962) ].

*Id.*, 349 Pa.Superior Ct. at 567-569, 504 A.2d at 189-190.

▆ Appellant argues that the intake report lacked trustworthiness because the person preparing the same could not have recognized the voice of the caller. "It is now well settled that the recipient of a telephone call may not testify as to the conversation unless the voice of the caller can be

identified." *Burton v. Pacific Mutual Life Ins. Co.,* 368 Pa. 613, 617, 84 A.2d 310, 313 (1951). The rule regarding identification of persons with whom a witness has had a telephone conversation is more stringent where the witness is the recipient of the call than where the witness placed the call, for the rule requiring identity of the speaker is subject to the exception that where the witness calls a listed telephone number of a party, testimony as to a conversation had with a person answering the telephone and representing himself or herself to be the person called is competent, even though the witness does not recognize the voice of the person who answered and is unable to identify the speaker. 14 P.L.E. Evidence § 61; *Kobierowski v. Commonwealth Mut. Ins. Co.,* 175 Pa.Super. 387, 105 A.2d 179 (1954). Generally, however, it is not enough that during the course of a conversation a party stated that he or she was a certain person. *Smithers v. Light,* 305 Pa. 141, 157 A. 489 (1931). Nevertheless, the identity of the caller may be established by the circumstances. *Limestone Products & Supply Co. v. Tom Brown, Inc.,* 198 Pa.Super. 375, 181 A.2d 696 (1962). Thus, authentication may be accomplished by circumstantial evidence showing facts that only one person would be likely to know. McCormick on Evidence § 226 (3d ed. 1984).

■ In the instant case, the caller gave his name, address and date of birth. He also stated that he had been accused of molesting the neighbors' daughter and that the neighbors were requesting that he seek treatment. Even more importantly, appellant's wife testified without objection that appellant had called the Child Guidance Center for an appointment. In view of these circumstances, we hold that appellant's identity as the caller was sufficiently established.

■ Finally, appellant contends that even if this evidence were relevant to impeach his testimony, it was not relevant to show that he told the intake worker that he had a "high

sex drive." The trial court disagreed with this objection. Although the court excluded the recorded opinion of the intake worker regarding the caller's attitude, the court held that the caller's telephone response to or explanation for the neighbors' accusation was a relevant fact for the jury to consider.

"The law furnishes no test of relevancy, but tacitly refers it to logic and general experience. Evidence is admissible which tends to make the fact at issue more or less probable or intelligible or to show the origin and history of the transaction between the parties and explain its character." *Gregg v. Fisher*, 377 Pa. 445, 454, 105 A.2d 105, 110 (1954). Therefore, issues of relevancy are left in large measure to the sound discretion of the trial court, whose decisions will not be reversed in the absence of a clear abuse of discretion. See: *Commonwealth v. Saksek*, 361 Pa.Super. 173, 522 A.2d 70 (1987); *Commonwealth v. Underwood*, 347 Pa.Super. 256, 500 A.2d 820 (1985); *Commonwealth v. Jackson*, 336 Pa.Super. 609, 486 A.2d 431 (1984); *Commonwealth v. Lumpkins*, 324 Pa.Super. 8, 471 A.2d 96 (1984).

In the instant case, although the decision is a close one, we conclude that the decision of the trial court was not an abuse of discretion. Appellant, who denied sexual contact with the alleged victim, had called Child Guidance for assistance and, when asked to explain the nature of the help requested, said that he had been accused of sexually molesting a neighbor and explained that his problem was a "high sex drive." Because it was appellant's response to the neighbors' accusation and was offered in response to an inquiry regarding the treatment being requested, we cannot say that it was wholly irrelevant. The trial court, therefore, did not err in allowing it in evidence. Its weight and effect were for the jury.

Having found no error requiring a new trial, the judgment of sentence will be affirmed.

Affirmed.