571 A.2d 1062

COMMONWEALTH of Pennsylvania

v.

**Stacey ZIMMERMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 19, 1990.

Filed March 2, 1990.

Joseph P. Green, Jr., West Chester, for appellant.

James Staerk, Asst. Dist. Atty., Norristown, for Com.

Before OLSZEWSKI, KELLY and JOHNSON, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence entered following appellant's conviction for theft by receiving stolen property [1] and forgery.[2]

The facts of this case, as summarized by the trial court, are as follows:

> Sometime during the last week of June, 1987 Sears Mortgage Corporation check number 82102 was taken from the desk of Susan Harmon who was employed by Sears Mortgage Corporation. During that time, [appellant] was employed by Priority One Transport, a courier service used by Sears Mortgage Corporation, and [appellant] had extensive access to Mrs. Harmon's desk.
>
> On July 2, 1987 the [appellant] entered the Provident National Bank in Lower Merion Township, Montgomery County, and opened a savings account in the name of Barry J. Allen as well as signed up for a Money Access Card (MAC) to access this account. [Appellant] presented a check to open the savings account in the amount of $44,605.00. The check was number 82102, drawn on Sears Mortgage Corporation and made out to Barry J. Allen. Paul McBroom, a Provident employee, helped [appellant] open this account and testified at trial that

1. 18 Pa.C.S.A. § 3925.
2. 18 Pa.C.S.A. § 4101.

[appellant] endorsed the check in his presence, signing the name Barry J. Allen, and signed several other documents needed to open the account. [Appellant] provided the address of 1220 Valley Forge Road, Valley Forge, Pennsylvania, which is the address of Valley Forge Mail Boxes and is a "maildrop" business in Upper Merion Township.

In the last week of June, 1987, [appellant] entered Valley Forge Mail Boxes and inquired regarding the possibility of renting a mailbox. The owner, Eva Johnson, explained the procedure to [appellant] who then departed. On July 6, 1987 [appellant] returned and opened a mailbox in the name of Barry J. Allen. July 6, 1987 was a Monday and was the first business day following a three day weekend to observe Independence Day. The last business day prior to July 6 was Thursday, July 2.

Both Eva Johnson and Paul McBroom testified that they had sufficient opportunity to observe [appellant] and were able to select [appellant's] picture from a photo array on November 19, 1987. Additionally, each positively identified [appellant] at both the preliminary hearing and trial.

Handwriting analysis was performed by County Detective Cedric McKeever on all questioned signatures of Barry J. Allen. Detective McKeever concluded that he could not compare the known writings of [appellant] with the questioned signatures because in his opinion [appellant] had faked his writing when asked to submit to handwriting exemplars by the Commonwealth.

Procedurally, an information charging Theft by Receiving Stolen Property, Forgery and related offenses was filed against [appellant]. At the preliminary hearing the Commonwealth alleged that the theft, the negotiation of the subject check with Provident Bank, had occurred on July 3, 1987, and that the mail box was opened in furtherance of the theft in the afternoon of July 6, 1987.

Thereafter, then defense counsel, John M. Close, timely filed a Notice of Alibi asserting that alibi testimony would be presented concerning [appellant's] whereabouts on July 3 and 6, 1987. The notice indicated that testimony would be offered from [appellant's] wife and possibly other family members and friends and from [appellant's] employment record and daily log. The notice also stated that:

This alibi defense will show that [appellant] was with his family on July 3, 1987, especially between the hours of 12 Noon and 2 P.M. and further this evidence will show that on July 6, 1987, [appellant] was, between 12:30 and 3 P.M., carrying out his employer's business and his locations will be shown by presentation of his personal records and his work log and by his employer, Priority One's testimony.

The above Notice of Alibi, however, did not contain any names or addresses of witnesses as required by Pa.R. Crim.P. 305(C)(1)(a). Because of this deficiency, the prosecutor requested more information regarding the alibi witnesses. Therefore, new defense counsel, Joseph P. Green, Jr., by letter dated August 23, 1988 sent to the Assistant District Attorney a list of three witnesses and their addresses[.]

\*　　\*　　\*　　\*　　\*　　\*

By these witnesses defense counsel intended to prove [appellant's] presence at his home at 419 Penn Lane, Springfield, and the home of [appellant's] in-laws at 443 West Leamy Avenue, Springfield, Delaware County, Pa. 19604, on July 3, 1987.

The case was scheduled for trial on November 22, 1988. However, prior to trial it was discovered that Paul McBroom had incorrectly testified at the preliminary hearing that the transaction with [appellant] at Provident occurred on July 3, 1987. Upon investigation, it was learned that Friday, July 3, 1987 was a bank holiday and that the transaction actually occurred on Thursday, July 2, 1987. This change in incident date was supported by

the documents forged by [appellant] which bore this date. Mr. McBroom explained this mistake at trial when he testified that he thought the [appellant] came in on a Friday because of the heavy volume of customers that day. Fridays, McBroom explained, have more customers because it is the end of the work week. This particular work week, however, ended with Thursday, July 2 and this accounted for McBroom's initial confusion.

Upon learning of the error of the July 3 date, the Commonwealth immediately notified counsel for [appellant] by telephone on November 16, 1988 and by letter dated November 22, 1988 that the incident was newly alleged to have been committed on July 2, [1987].[3] Defense acknowledged the change of date by letter dated November 16, 1988. Because of the changed incident date, both counsel agreed to a continuance which was granted and the new trial date of January 24, 1989 was scheduled. No further communication occurred between defense counsel and the Assistant District Attorney regarding the alibi witnesses.

On January 24, 1989 the Commonwealth moved to amend the Bills of Information to reflect July 2, 1987 as the Provident Bank incident date. This motion was granted by the [trial court]. Immediately thereafter, defense counsel moved to amend his Notice of Alibi to provide an alibi for July 2, 1987. This Motion was denied by the [trial court] when counsel for [appellant] admitted to notice of the correct date on November 16, 1988 and in light of the fact that [appellant] failed to file a notice of a change in alibi defense any time between November 16, 1988 and January 24, [1989].[4] Following the suppression hearing, [appellant] proceeded to trial and was convicted

---

3. The trial court opinion states that the incident was newly alleged to have occurred on July 2, 1988. It is clear from the record, however, that July 2, 1987 is the correct date.

4. The trial court opinion states this date as January 24, 1988. It is clear from the record, however, that January 24, 1989 is the correct date.

of Theft by Receiving Stolen Property, Criminal Attempt at Theft and Forgery.

Following denial of [appellant's] post verdict motions by [trial court] Order of May 2, 1989, [appellant] was sentenced on May 17, 1989 to six to twenty-three months on the Theft by Receiving Stolen Property conviction and five years probation of the Forgery conviction with the Criminal Attempt at Theft merging.

Trial court opinion, at 2–6. This timely appeal followed.

Appellant presents four issues for our review. Appellant's first issue is "[w]hether the trial court erred (1) in refusing to permit [appellant] formally to amend his notice of alibi, and thereafter (2) in refusing to permit alibi evidence, when permission to amend was sought immediately after the Commonwealth amended the Information to change the date on which the offense was alleged to have been committed." Appellant's second issue is "[w]hether the trial court erred in excluding alibi evidence, notice of which had previously been given, where the witness from whom the evidence was to be elicited was called as a Commonwealth witness." Appellant's third and fourth issues are "[w]hether the [trial] Court erred in refusing to hold a hearing out of the presence of the jury to consider whether to exclude scientific evidence[,]" and "[w]hether the [trial] Court erred in admitting scientific evidence purporting to prove consciousness of guilt when the evidence was novel scientific evidence not generally accepted within the relevant scientific community."

I.

Appellant first contends that "the trial court erred (1) in refusing to permit [appellant] formally to amend his notice of alibi, and thereafter (2) in refusing to permit alibi evidence, when permission to amend was sought immediately after the Commonwealth amended the Information to change the date on which the offense was alleged to have been committed." Appellant argues that his failure to notify the Commonwealth of his changed alibi defense until

the day of trial was not a violation of Pa.R.Crim.P. 305. Alternatively, appellant argues that if Rule 305 was violated, exclusion of all alibi evidence was an inappropriate sanction under the circumstances.

We first consider whether appellant's failure to notify the Commonwealth before January 24, 1989, of the changes in its proposed alibi defense was a violation of Pa.R.Crim.P. 305. Rule 305(C)(1)(a) requires that:

> A defendant who intends to offer the defense of alibi at trial shall ... file of record notice ... specifying intention to claim such defense. *Such notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of witnesses whom the defendant intends to call in support of such claim.*

(Emphasis added.) In the instant case, appellant did file notice of alibi defense before trial. While appellant's initial notice of June 2, 1988 was not sufficiently specific, an amendment filed on August 23, 1988, listing the names and addresses of witnesses who would give alibi testimony for July 3, 1987 gave adequate notice. Appellant's trial, scheduled for August 30, 1988, was delayed to allow the Commonwealth time to prepare to meet appellant's late-listed alibi testimony.

Once the Commonwealth notified appellant in November that it intended to prove that appellant deposited the check on July 2, 1987 rather than on July 3, 1987, appellant's proposed alibi defense concerning July 3 became irrelevant. If appellant intended to offer an alibi defense for July 2, 1987, he was required, pursuant to Pa.R.Crim.P. 305(C)(1)(a) to file a notice of this alibi, containing specific information, within a reasonable time.[5]

**5.** Alternatively, were we to find that appellant's prior notice of alibi defense was still effective after the Commonwealth gave notice that it intended to prove that appellant deposited the check on July 2, 1987, rather than July 3, 1987, appellant was under a duty, pursuant to Pa.R.Crim.P. 305(D), to promptly notify the Commonwealth or the trial court of his alibi witnesses for July 2. Appellant's attempt to notify the Commonwealth and the trial court of his new alibi defense

There is nothing in the record to indicate that appellant notified the Commonwealth of the specifics of his new alibi defense, or that he even intended to present an alibi for July 2, 1987, until the day of trial.[6] This notice came more than two months after appellant had been notified of the change in the Commonwealth's case.[7] Appellant's attempt to file notice of alibi defense on the day of trial was a clear violation of Pa.R.Crim.P. 305.

Having decided that Rule 305 was violated, we next discuss whether the sanctions imposed by the trial court were appropriate under the circumstances.

Pa.R.Crim.P. 305(C)(1)(d) states:

If the defendant fails to file and serve notice of alibi defense ... as required by this rule, or omits any witness from such notice, *the court* at trial may exclude the testimony of such omitted witness, or *may exclude entirely any evidence offered by the defendant for the purpose of proving the defense*, except testimony by the defendant, or may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

(Emphasis added.) The sanction imposed by the trial court, preclusion of appellant's unnoticed alibi evidence, is expressly permitted by the rule. Appellant does not argue

on the day of trial, 69 days after the Commonwealth notified him of the change in its proof, was not prompt, and was a violation of Pa.R.Crim.P. 305(D).

6. Appellant notified the Commonwealth and the court of his intent to present alibi testimony for July 2, 1987 at the suppression hearing on the day of trial, January 24, 1989. The Commonwealth notified appellant's attorney of the change in its case by telephone call on November 16, 1988, followed by letter dated November 22, 1988. In a letter dated November 16, 1988, confirming the change, appellant's counsel stated "As a result [of the change in the Commonwealth's case] I need to reevaluate whether an alibi defense is available[.]" The record does not reflect that appellant made any further mention of any alibi defense until the day of trial.

7. While the Commonwealth did not actually move to amend the bills of information until the suppression hearing of January 24, 1989, it is undisputed that appellant received more than two months' notice of the Commonwealth's intent. Appellant did not object to the amendment, nor has appellant ever claimed that he was prejudiced thereby.

that the Rule 305(C)(1)(d) is unconstitutional on its face.[8] Rather, he argues that the trial court's decision to exclude all alibi evidence was an improper sanction under the circumstances.

■ The imposition of sanctions for violations of Pa.R. Crim.P. 305 rests in the sole discretion of the trial court. *Commonwealth v. Malone*, 356 Pa.Super. 281, 514 A.2d 612 (1986); *Commonwealth v. Yost*, 348 Pa.Super. 297, 502 A.2d 216 (1985) (per curiam). In *Commonwealth v. Anthony*, 376 Pa.Super. 623, 546 A.2d 1122 (1988), this Court affirmed the exclusion of alibi defense where the defendant had failed to give notice of the defense until the morning of trial. In the instant case, appellant's counsel was notified 69 days before trial that the Commonwealth would attempt to prove that the check was deposited on July 2, 1987, rather than on July 3, 1987. Appellant waited until the day of trial to give any notice of his intent to present an alibi for July 2. We hold that the trial court did not abuse its discretion in excluding appellant's proposed alibi testimony.

■ This finding does not conclude our analysis of this issue. Appellant cites *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), for the proposition that the trial court was constitutionally required to perform an on-the-record balancing test before imposing sanctions. We read no such requirement into *Taylor*. We do find that *Taylor* provides guidance concerning whether the sanction imposed complied with the sixth amendment to the United States Constitution:

A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to

**8.** This Court, in *Commonwealth v. Fernandez*, 333 Pa.Super. 279, 482 A.2d 567 (1984), held Pa.R.Crim.P. 305(C) constitutional on its face and as applied, affirming a trial court's exclusion of alibi testimony where not proffered until mid-trial.

adduce rebuttal evidence, it would be entirely consistent with the purposes of the Confrontation Clause simply to exclude the witness' testimony.

*Taylor, supra,* 484 U.S. at 415, 108 S.Ct. at 655–656, 98 L.Ed.2d at 814.

Here the trial court did not ask appellant's counsel to explain his failure to identify his alibi witnesses in advance of trial. The court did, however, confirm that appellant's counsel had been notified more than two months before trial of the change in the Commonwealth's case. Transcript of January 24, 1989 Suppression hearing, at 37–38. The court concluded that appellant "had deliberately failed to comply with the mandatory provisions of [Pa.R.Crim.P.] 305 in an attempt to delay an already lengthy litigation." Trial court opinion, at 10. The record provides ample support for this conclusion, including: (1) appellant's initial deficient notice of alibi defense; (2) appellant's late filing of specific information concerning his alibi defense for July 3, and the resulting continuance from August 30, 1988 to November, 1988; (3) the continuance from November, 1988 to January 24, 1989, granted "solely and for the specific reason of allowing [appellant] to reevaluate his alibi position," and (4) appellant's attempt to file notice of alibi defense on the day of trial. Trial court opinion, at 9.

The trial court's exclusion of appellant's alibi evidence, based on the finding of deliberateness, is entirely consistent with *Taylor.* We do not find that *Escalera v. Coombe,* 852 F.2d 45 (2nd Cir.1988), cited by appellant, requires us to remand for fact finding.[9] As appellant states in his brief, *Escalera* was remanded for the lower court to determine whether appellant's violation of discovery rules was willful. In the case before us, the trial court specifically found that appellant "deliberately failed to comply with the mandatory provisions of [Pa.R.Crim.P.] 305 in an attempt to delay an already lengthy litigation." Trial court opinion, at 10. We

9. *Escalera* was heard on remand from the United States Supreme Court "for further consideration in light of *Taylor v. Illinois* [.]" *See Coombe v. Escalera,* 484 U.S. 1054, 108 S.Ct. 1004, 98 L.Ed.2d 971 (1988).

hold that this finding satisfies the dictates of *Taylor*, and that the trial court's exclusion of appellant's alibi evidence did not violate appellant's rights under the sixth amendment to the United States Constitution.

## II.

■ Appellant next argues that "the trial court erred in excluding alibi evidence, notice of which had previously been given, where the witness from whom the evidence was to be elicited was called as a Commonwealth witness." We begin with the observation that although the excluded evidence was indeed in the nature of an alibi, the trial court excluded the evidence because it was hearsay. The excluded evidence consisted of business records kept by appellant's employer, Priority One Transport. Appellant sought to introduce these business records, job order tickets,[10] during the cross-examination of a Commonwealth witness.

The trial court admitted the notations on the job order tickets as evidence that telephone calls were received at Priority One Transport on July 6, 1987. The court, however, did not admit the notations as evidence either that the calls were made by appellant, or that appellant had actually been at the locations stated on the tickets. The court based its ruling on the fact that the authenticating witness, Ms. Leslie Testan, was not the same person who received the telephone calls in question.

■ The admissibility of business records in Pennsylvania courts is controlled by the Uniform Business Records as Evidence Act, 42 Pa.C.S.A. § 6108, which states in part:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of

10. Appellant sought to introduce notations made on the job order tickets as evidence that appellant had been at specific locations at specific times on July 6, 1987, and that he therefore could not have been opening a "mail drop" at Valley Forge Mail Boxes in Upper Merion Township. The notations on the job order tickets were made at Priority One Transport's office, based on information received by telephone.

its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and *if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.*

42 Pa.C.S.A. § 6108(b) (emphasis added). The decision whether to admit business records into evidence rests in the discretion of the trial court. *Commonwealth v. Morocco,* 375 Pa.Super. 367, 544 A.2d 965 (1988), *allocatur denied,* 520 Pa. 615, 554 A.2d 508 (1989); *Thomas v. Allegheny & Eastern Coal Co.,* 309 Pa.Super. 333, 455 A.2d 637 (1982); 42 Pa.C.S.A. § 6108(b).

In order for business records to be admissible, "it is essential that no lack of trustworthiness appear in the source of information or the method or circumstances of preparation. The factors to be weighed in evaluating the trustworthiness of business records include whether there was either motive or opportunity to prepare an inaccurate record[.]" *Ganster v. Western Pennsylvania Water Co.,* 349 Pa.Super. 561, 568–69, 504 A.2d 186, 190 (1985); *accord Commonwealth v. Sullivan,* 372 Pa.Super. 88, 538 A.2d 1363 (1988), *allocatur denied,* 521 Pa. 612, 557 A.2d 343 (1989).

The job order tickets, offered as evidence that the telephone calls received were actually made by appellant, were hearsay within hearsay. In dealing with hearsay within hearsay, or double hearsay, the reliability and trustworthiness of each declarant must be independently established. *Commonwealth v. Scott,* 503 Pa. 624, 470 A.2d 91 (1983). In this case, appellant did not independently establish the reliability of the recipient's identification of appellant as the caller. *See Commonwealth v. Sullivan, supra.*

As proof that appellant was at the locations and times stated on the job order tickets, the evidence represented yet a third level of hearsay, the reliability and trustworthiness of which was certainly open to question. Appellant had the opportunity and possible motive, *Ganster, supra,* to cause entries to be made on the tickets that did not accurately

reflect appellant's actual whereabouts of July 6, 1987. Questioned by the court, the authenticating witness stated:

THE COURT: Well, what you're saying, Mrs. Testan, is that the time of delivery depends upon the courier's call to you and you recording what he said?

THE WITNESS: The number on the page is, yes, determined by the driver.

THE COURT: Because by the nature of the business you're not there, you don't know whether what he's telling you is necessarily the truth.

THE WITNESS: That's right. The only reason I would have to question it would be if the person that is supposed to be receiving the package would call.... So then I would question it, otherwise I would take the driver's word for it.

Transcript of January 24, 1989, at 58. We hold that the trial court did not abuse its discretion in excluding the hearsay contained in the business records as proof that specific telephone calls were made by appellant, or that appellant actually was in the locations stated on the records.

### III.

█ Appellant's third issue is "[w]hether the [trial] Court erred in refusing to hold a hearing out of the presence of the jury to consider whether to exclude scientific evidence." We begin observing that this case was heard as a non-jury trial.[11] Appellant's third issue, therefore, is moot.

### IV.

█ Appellant's fourth issue is "[w]hether the [trial] Court erred in admitting scientific evidence purporting to prove consciousness of guilt when the evidence was novel scientific evidence not generally accepted within the relevant scientific community." The evidence appellant objects

11. Appellant does not attack in this appeal the validity of his waiver of jury trial, nor does he argue that the judge should have recused himself from hearing the trial because he presided at the suppression hearing.

to is the testimony of a properly qualified handwriting expert who testified for the Commonwealth concerning his examination of documents. The witness's expertise in examining handwriting was not disputed by appellant.

Appellant objects to the witness's opinion testimony that appellant had faked a handwriting exemplar in an attempt to hide his true handwriting. The witness based his opinion on his observation of appellant's unusually slow completion of the exemplar and the witness's extensive experience in obtaining handwriting exemplars. Appellant objects that this aspect of the witness's testimony was not based on scientific principles "generally accepted by scientists active in the appropriate scientific communities." *Commonwealth v. Miller*, 367 Pa.Super. 359, 365–366, 532 A.2d 1186, 1189 (1987).

■ We begin our analysis of appellant's fourth issue by assuming, *arguendo*, that the witness's opinion that appellant falsified his handwriting exemplar was not properly qualified scientific evidence under *Miller, supra*. It is presumed that a judge, sitting as fact finder, is not improperly influenced by evidence which would otherwise be considered prejudicial. *Commonwealth v. Brown*, 336 Pa.Super. 628, 486 A.2d 441 (1984); *Cf. Commonwealth v. Lewis*, 314 Pa.Super. 298, 460 A.2d 1149 (1983) (where judge presides at pre-trial suppression hearing, he need not recuse himself as fact finder at trial unless inadmissible evidence of a highly prejudicial nature was presented at the suppression hearing); *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980) (harmless error found where trial judge sitting as fact finder expressly stated that he disregarded evidence of defendant's criminal record).

We find no evidence of record to overcome the presumption that the judge sitting as fact finder gave the witness's conclusion proper weight. To the contrary, the trial court specifically states that it did not accept the witness's disputed conclusion:

the testimony ... that [appellant] exhibited very unusual behavior when giving the exemplar was relevant but that

the conclusion that [appellant] had faked [his handwriting] was for this Court to determine based on the witness' credibility and the foundation laid. It is important to note, as previously discussed, that there was overwhelming evidence against [appellant] indicating that it was [appellant] who opened the bank account with the stolen Sears Mortgage check and who endorsed same, and that it was [appellant] who opened the mail drop box.

Trial court opinion, at 14. The court states further that it "was fully aware of the limited weight to be given" to the witness's opinion that appellant had falsified the handwriting exemplar. *Id.* Where, as in this case, the weight of competent evidence clearly supports the verdict, we decline appellant's invitation to find error. *Commonwealth v. Harvey,* 514 Pa. 531, 526 A.2d 330 (1987).

Judgment of sentence affirmed.