J. S09008/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
  :        PENNSYLVANIA
            v.  :
  :
ISAIAH JONES,  :    No. 431 WDA 2014
  :
          Appellant  :


Appeal from the Judgment of Sentence, February 10, 2014,
in the Court of Common Pleas of Westmoreland County
Criminal Division at No. CP-65-CR-0003493-2011


BEFORE: FORD ELLIOTT, P.J.E., BOWES AND ALLEN, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED JUNE 24, 2015**

Isaiah Jones appeals from the judgment of sentence of February 10, 2014, following his conviction of robbery and related charges. After careful review, we vacate and remand for resentencing, but affirm in all other respects.

The trial court has summarized the history of this case as follows:

> The Defendant was charged by Criminal Information filed at No. 3493 C 2011 with numerous violations of the Pennsylvania Crimes Code, including Robbery, Aggravated Assault, Simple Assault, Recklessly Endangering Another Person and Theft by Unlawful Taking. These charges arose from an incident that occurred on June 4, 2011 in Monessen, Westmoreland County, Pennsylvania. The testimony at trial established that on June 4, 2011, Jason McCullough was working as an employee of Del Rosa's Pizza Shop, and that part of his job involved delivering pizzas to individuals who had placed orders. McCullough testified that he knew

Isaiah Jones before that date, but only knew him by his nickname, "Oogie." He testified that he had delivered an order to "Oogie" at 464 Reed Avenue in Monessen earlier that evening, and returned to deliver another order at approximately 10:00 p.m. McCullough related that as he approached the rear entrance to the residence, he was struck from behind and thrown to the ground. He further stated that the person who had assaulted him then placed a gun to the side of his head and demanded all of his money. McCullough gave the person some of the money that was in the pocket of his pants, and the person demanded that he give him all of the money or he would kill him. The person patted McCullough down, felt more money in his pocket and "pistol whipped" him before he removed the rest of the money from his pants. McCullough could see parts of the gun, and was able to describe the weapon.

When the person who assaulted and robbed him ran off, McCullough immediately screamed for help. The resident of the front apartment, Stephanie Shanefelt, let him inside her apartment and called 9-1-1 for him. McCullough told her, "Oogie robbed me, Oogie robbed me," and also called his employer at the pizza shop to tell him what had occurred. Although he never saw his face, McCullough recognized the voice of his attacker as that of the person who he knew as "Oogie," and identified "Oogie" at trial as the defendant, Isaiah Jones.

Stephanie Shanefelt testified that she had been inside her apartment on the evening of June 4, 2011 when McCullough rang her doorbell, thinking that the delivery was for her. She suggested that he try the rear apartment. Shortly thereafter, she heard yelling, and when she looked outside her window, she saw "the pizza man" running from around the side of the house and also saw "Oogie" running from behind the house and down the street. She stated that McCullough (the ["]pizza man") repeatedly said that "Oogie" had robbed him. She testified that she knew "Oogie" at the time of the incident, and also positively identified him at trial.

Some time after the incident, after Jones had been charged with these crimes, McCullough testified that he received an anonymous letter in the mail offering him $1,000.00 if he would not testify against Jones, and threatening him with "consequences" if he chose to do so. Jones' girlfriend, Pashun Pettiford, testified that Jones had written to her, instructed her to send a letter to McCullough, and specified exactly what words should be contained in that letter. She identified the letter that McCullough had received as being the letter she wrote at Jones' direction.

Keith Barber testified that on February 19, 2012, he h[e]ard sounds of a crash outside of his North Belle Vernon home at approximately 10:20 p.m. He saw that a SUV had collided with a tree across the street from hi[s] house. He heard police shouting to "come out of the car." He was on his way to see if his neighbor was all right, and noted that his back gate was open. He went to the back yard to investigate, and when he opened the door to his shed, a tall individual wearing a dark hoodie and jeans came out of the shed and ran away. Barber alerted the police that "they're back here," and the police gave chase. Barber testified that he immediately went into the shed and spotted a red ball cap that did not belong to him or any member of his family. Upon closer examination, Barber saw a cell phone and a gun and traces of blood inside of the shed. He stated that he had been in the shed earlier [and] that none of the items he discovered, nor the blood smears, had been there prior to his observing the unknown individual running out of the shed on that night. He promptly notified police of his discoveries. Police took custody of the gun that Barber found in his shed, and also preserved samples of the blood smears that were located in the interior of the shed. DNA analysis of the blood found inside Barber's shed matched the sample of blood that was subsequently obtained from Jones. DNA analysis of the gun found in the

shed was inconclusive because it contained a DNA mixture from at least four individuals.

Trial court opinion, 6/4/14 at 1-4 (footnote and citations omitted).

Following a jury trial held November 4, 6, and 7, 2013, appellant was found guilty of three counts of robbery, aggravated assault, simple assault, recklessly endangering another person, and theft by unlawful taking. On February 10, 2014, appellant was sentenced to a mandatory minimum of 5 to 10 years' incarceration at Count 1, robbery, pursuant to 42 Pa.C.S.A. § 9712(a) (visible possession of a firearm during commission of the offense). At Count 4, aggravated assault, appellant received a concurrent sentence of 1½ to 3 years; at Count 6, recklessly endangering, the trial court imposed no further sentence. The remaining charges merged for sentencing purposes. Therefore, appellant's aggregate sentence was 5 to 10 years' imprisonment. This timely appeal followed. Appellant has complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

Appellant has raised the following issues for this court's review:

> I.  Did the Trial Court impose an illegal sentence in relying upon the mandatory sentence in 42 Pa.C.S.A. § 9712, in light of the Superior Court decision in Commonwealth v. Newman, 2014 PA Super 178 (2014), which declared the mandatory sentencing statute to be unconstitutional?
>
> II. Did the Trial Court err in excluding from evidence the proposed testimony of alibi witnesses for Defendant?

III.   Did the Trial Court err in allowing the Commonwealth to introduce evidence tending to show that Defendant possessed a firearm on an occasion approximately eight months after the offenses for which he was tried?

IV.   Did the Trial Court err in refusing to grant a mistrial where the prosecuting attorney elicited testimony from a witness about an alleged conversation she had with Defendant's attorney, which testimony would have required counsel to become a witness in the trial to contradict the same?

Appellant's brief at 4.

In his first issue on appeal, appellant argues that his sentence is illegal. As stated above, the trial court imposed the 5 to 10-year mandatory minimum sentence for crimes committed with firearms pursuant to 42 Pa.C.S.A. § 9712. Following the United States Supreme Court's decision in **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151 (2013), Section 9712 has been held unconstitutional in its entirety. **Commonwealth v. Ferguson**, 107 A.3d 206, 213-216 (Pa.Super. 2015), discussing **Commonwealth v. Valentine**, 101 A.3d 801 (Pa.Super. 2014); and **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super. 2014) (**en banc**). Therefore, it is necessary to vacate appellant's sentence and remand for

resentencing without consideration of the mandatory minimum sentence provided in Section 9712.[1]

The Commonwealth argues that any error is harmless because appellant's sentence was within the guidelines and the trial court could have imposed the same sentence without applying the mandatory minimum sentence pursuant to Section 9712. The Commonwealth's argument is misplaced. Regardless of whether the trial court could have imposed the same sentence without relying on Section 9712 and remained within the guidelines, the fact of the matter is that the trial court did impose the mandatory 5 to 10-year sentence required by Section 9712, as requested by the Commonwealth. (Notes of testimony, sentencing, 2/10/14 at 2, 4.) *See Commonwealth v. Cardwell*, 105 A.3d 748, 750 (Pa.Super. 2014) ("It is also well-established that [i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." (quotation marks and citation omitted)). In addition, the fact that the jury found appellant was in possession of a firearm at the time of the crime beyond a reasonable doubt is of no moment. (Notes of testimony, 11/4, 6-7/13 at 423.) The unconstitutional provisions of Section 9712 are not severable, and the trial court cannot create a new procedure in an effort to impose the mandatory minimum sentence in

---

[1] Appellant did not raise this issue in the court below. However, it is well settled that a challenge to the legality of a sentence is non-waivable. *Ferguson*, 107 A.3d at 213 n.4.

compliance with **Alleyne** by allowing the jury to determine the factual predicate of Section 9712. **Ferguson**, 107 A.3d at 216.

In his second issue on appeal, appellant argues that the trial court abused its discretion by excluding proposed alibi witnesses. According to appellant, two alibi witnesses, Earl Pinkney and Ethan Pinkney, could testify that he was not in the vicinity of his home at the time of the robbery. The trial court ruled that appellant could not call these witnesses at trial because he failed to comply with the notice requirements of Pa.R.Crim.P. 567.

Rule 567 provides, in relevant part:

**Rule 567.  Notice of Alibi Defense**

**(A)  Notice by Defendant.**  A defendant who intends to offer the defense of alibi at trial shall file with the clerk of courts not later than the time required for filing the omnibus pretrial motion provided in Rule 579 a notice specifying an intention to offer an alibi defense, and shall serve a copy of the notice and a certificate of service on the attorney for the Commonwealth.

(1)  The notice and a certificate of service shall be signed by the attorney for the defendant, or the defendant if unrepresented.

(2)  The notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses whom the defendant intends to call in support of the claim.

**(B)    Failure to File Notice.**

(1)    If the defendant fails to file and serve the notice of alibi as required by this rule, the court may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

Pa.R.Crim.P. 567.

Accordingly, Rule [567] enables the trial court, when the notice requirement is not met, to take such measures as preventing an alibi witness from testifying and to deny a request for an alibi instruction.  Rule [567] is "designed to enhance the search for truth in the criminal trial by insuring both the defendant and the state ample opportunity to investigate certain facts crucial to the determination of guilt or innocence."

*Commonwealth v. Poindexter*, 646 A.2d 1211, 1219 (Pa.Super. 1994), *appeal denied*, 655 A.2d 512 (Pa. 1995), quoting *Commonwealth v. Fernandez*, 482 A.2d 567, 572 (Pa.Super. 1984).  "The imposition of sanctions for violations of Pa.R.Crim.P. [567] rests in the sole discretion of the trial court."  *Commonwealth v. Zimmerman*, 571 A.2d 1062, 1067 (Pa.Super. 1990), *appeal denied*, 600 A.2d 953 (Pa. 1991), *cert. denied*, 503 U.S. 945 (1992) (citations omitted).

Instantly, appellant filed his alibi notice on July 5, 2012, well after the time required for filing pre-trial motions.  *See* Pa.R.Crim.P. 579(A) ("Except

as otherwise provided in these rules, the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown."). Appellant waived formal arraignment on October 6, 2011.

In his alibi notice, appellant provided the names, addresses, and telephone numbers of the two witnesses. (Notes of testimony, 11/4/13 at 3.)[2] However, appellant did not provide any specific information regarding where he was at the time the crime was alleged to have been committed, as required by Rule 567. Appellant stated only that he "was not in the vicinity" as alleged in the information. A hearing was held on July 11, 2012, before the Honorable Alfred B. Bell, who granted appellant 30 days to file an amended alibi notice. (Notes of testimony, 7/11/12 at 13-14; Docket #30.) A continuance was granted until the September trial term to give appellant time to provide the Commonwealth with the requested information. (**Id.** at 14.)

---

[2] In its original Rule 1925(a) opinion, the trial court states that, "No contact information was provided by the defense other than the names of these individuals." (Trial court opinion, 6/4/14 at 5.) Subsequently, after the record was transmitted to this court, it came to the trial court's attention that appellant had, in fact, provided the Commonwealth with the witnesses' names, addresses, and telephone numbers. (Notes of testimony, 8/22/14 at 3.) Subsequently, the trial court filed a supplemental Rule 1925(a) opinion on August 26, 2014.

On November 1, 2013, the Commonwealth filed a second motion to exclude alibi defense, noting that appellant had failed to provide any of the ordered alibi defense information. (Docket #56.) A hearing was held on the motion on November 4, 2013, before the Honorable Rita Donovan Hathaway. The Commonwealth argued that on July 11, 2012, Judge Bell had given appellant 30 days to provide additional information and appellant failed to comply. (Notes of testimony, 11/4/13 at 2.) Appellant conceded that he failed to amend his alibi notice to include specific information regarding where appellant claimed to be at the time the crime was committed. (*Id.* at 3-4.) Appellant argued that he provided the Commonwealth with the witnesses' names, addresses, and telephone numbers and it was up to the Commonwealth to investigate the witnesses. (*Id.* at 3-6.) According to appellant, "I'm being blamed for not providing information that she could have or Officer Gray could have gotten with a phone call or a stop by." (*Id.* at 5.) Judge Hathaway granted the Commonwealth's motion and ruled that while appellant could testify as to his whereabouts at the time of the alleged crime, the proposed alibi witnesses would be excluded. (*Id.* at 6.)

We determine that the trial court did not abuse its discretion in granting the Commonwealth's motion to exclude alibi defense. Appellant's initial alibi notice was manifestly untimely, having been filed approximately eight months after arraignment. Then, despite having been given 30 days

to file an amended alibi notice in compliance with Rule 567, appellant failed to do so. Contrary to appellant's argument, it is not the Commonwealth's responsibility to investigate his proposed alibi witnesses to ascertain what they are likely to testify to at trial. Rule 567 is explicit that "The notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense." Pa.R.Crim.P. 567(A)(2). On the eve of trial, some 16 months after Judge Bell's order, appellant had still not filed an amended alibi notice. There is no error here.

Next, appellant argues that the trial court erred in granting the Commonwealth's motion **in limine** to admit the firearm recovered from Barber's shed. Appellant maintains that there was no evidence linking the gun to the robbery and any probative value the gun had was outweighed by its prejudicial effect. (Appellant's brief at 23.) We disagree.

"The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." **Commonwealth v. Broaster**, 863 A.2d 588, 591-592 (Pa.Super. 2004), citing **Commonwealth v. Reid**, 811 A.2d 530, 550 (Pa. 2002).

> According to Pa.R.E. 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Relevant evidence may nevertheless be excluded 'if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'[Footnote 4]

> [Footnote 4] **See** Pa.R.E. 403; **Commonwealth v. Kitchen**, 730 A.2d 513 (Pa.Super.1999).

Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged.

**Commonwealth v. Serge**, 837 A.2d 1255, 1260-61 (Pa.Super.2003).

In addressing the admissibility of a gun for demonstrative purposes, the Pennsylvania Supreme Court has held that:

[a] weapon shown to have been in a defendant's possession may properly be admitted into evidence, even though it cannot positively be identified as the weapon used in the commission of a particular crime, if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime.

> *Commonwealth v. Williams*, 537 Pa. 1, 16, 640
> A.2d 1251 (1994).

*Id.* at 592. "With regard to the admission of weapons evidence, such evidence is clearly admissible where it can be shown that the evidence was used in the crime charged." *Commonwealth v. Owens*, 929 A.2d 1187, 1191 (Pa.Super. 2007), *appeal denied*, 940 A.2d 364 (Pa. 2007) (citation omitted). "Uncertainty whether the weapons evidence was actually used in the crime goes to the weight of such evidence, not its admissibility." *Id.* (citation omitted).

At the hearing on the Commonwealth's motion, the Commonwealth argued that the appearance of the gun recovered from Barber's shed was consistent with the victim's description of the gun used in the robbery. The victim described the gun as a small, black and silver semi-automatic handgun, not a revolver. (Notes of testimony, 11/4/13 at 7.) The gun found in Barber's shed was a small-caliber, black and silver semi-automatic handgun. (*Id.* at 8, 12-13.) The gun was black and shiny with silver trim, which matched the victim's description to police. (*Id.*)

In fact, at trial, the victim identified it as the same gun. (Notes of testimony, 11/4, 6-7/13 at 51; Commonwealth's Exhibit 12.) Clearly, the gun was admissible as evidence, whether it was actually the same gun used in the robbery or not. At a minimum, it tended to prove that appellant had a weapon similar to the one used in the perpetration of the crime. Although it

was not recovered until eight months later, it was highly relevant. Furthermore, the trial court gave the jury a limiting instruction. (***Id.*** at 416-417.) The trial court did not abuse its discretion in granting the Commonwealth's motion to introduce this evidence.

Finally, appellant argues that the trial court should have declared a mistrial when the Commonwealth elicited testimony from Shanefelt regarding a conversation she allegedly had with defense counsel approximately 3-4 months after the crime occurred. On cross-examination, Shanefelt admitted that she did not identify appellant as the victim's assailant the night of the incident, nor three months later, when she provided police with a written statement. (***Id.*** at 124-127.) On redirect, the Commonwealth attempted to rehabilitate Shanefelt by questioning her about a telephone conversation she allegedly had with defense counsel, Alan J. Manderino, Esq., in September or October 2011. (***Id.*** at 133.) According to Shanefelt, she told Attorney Manderino that she saw appellant running away from the house. (***Id.*** at 134.) Shanefelt testified that she told Attorney Manderino she could identify the perpetrator as appellant. (***Id.***)

At sidebar, Attorney Manderino made a request for mistrial. (***Id.*** at 135.) Attorney Manderino remembered speaking with Shanefelt but denied that she ever told him she could identify his client, appellant. (***Id.*** at 136, 138-139.) Attorney Manderino indicated that he would have to call himself as a witness to refute Shanefelt's testimony. (***Id.*** at 136-138.) According

to the prosecuting attorney, Shanefelt had just informed her about the conversation with Attorney Manderino the previous day. (***Id.*** at 136, 139.) The trial court denied the motion for mistrial but issued a curative instruction to the jury as follows:

> Ladies and gentlemen, thank you for your patience. As I told you earlier this morning, sometimes the attorneys and I have legal matters that we have to discuss at sidebar outside of your hearing to make sure that you receive the evidence in a fair and impartial manner. I am now instructing you to disregard the questions that Mrs. Patterson asked the witness pertaining to any possible conversations with Mr. Manderino. You're to disregard her questions, you're to disregard any answers that the witness gave, so it's just like that part never happened. I should not have allowed those questions or answers to be given. They were legally inappropriate so they never happened and I do trust that you'll be able to follow that instruction, so if you have anything in your notes about it just cross it out.

***Id.*** at 144-145.

> With regard to the denial of mistrials, the following standards govern our review:
>
> > In criminal trials, the declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interests but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event

> may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 877-878 (Pa.Super. 2012), *appeal denied*, 69 A.3d 600 (Pa. 2013) (citations omitted). "The remedy of a mistrial is an extreme remedy required 'only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.'" *Id.* at 878 (citations omitted). When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for mistrial, "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Brown*, 786 A.2d 961, 971 (Pa. 2001) (citation omitted), *cert. denied*, 537 U.S. 1187 (2003).

Instantly, the trial court issued a prompt and thorough curative instruction to the jury, instructing them to disregard Shanefelt's testimony regarding the alleged conversation with Attorney Manderino. The prejudice to appellant was minimal. Appellant was able to establish, through cross-examination, that Shanefelt never told police she could identify the victim's assailant. Shanefelt admitted that she never identified "Oogie" as the individual she saw running from the house the night of the robbery either in her statement to police that night or in a written statement three

months later. The first time she identified appellant was at trial. At any rate, the victim himself testified unequivocally that he is familiar with appellant and that he was the robber. (*Id.* at 61.) The trial court did not abuse its discretion in denying appellant's motion for mistrial.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2015